**Patrick Eugene EATHERTON,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. 89–39.

Supreme Court of Wyoming.

April 9, 1991.

**94**

the elements of the crime if that evidence also depicts conduct that would tend to establish a crime of which the defendant was acquitted in a prior trial. In the first trial, Patrick Eatherton (Eatherton) was convicted of burglary, but acquitted of larceny, with both charges arising out of a continuum of circumstances. The trial court ruled that the State was not foreclosed from introducing evidence that the victim's money was stolen when Eatherton was retried for burglary after his earlier conviction was reversed. A corollary issue is whether the defendant was entitled to prove the acquittal if the evidence of the theft was properly received. In this regard, the trial court ruled that the State could not introduce evidence of Eatherton's previous conviction of the burglary and that Eatherton could not introduce evidence that he had been acquitted of the charge of larceny. We agree with the rulings of the trial court with respect to the evidence, and we affirm Eatherton's conviction and judgment and sentence.

Eatherton submits the following issues:

"I. Did the trial court err in admitting evidence of the larceny, where the defendant had previously been acquitted, and an analysis of the jury's verdict reveals that the basis for that verdict was a finding that no larceny occurred.

"II. Did the trial court err in not allowing appellant to present to the jury evidence that he had been acquitted of larceny in the previous proceeding."

The State frames these issues as:

"I. Was it proper for the district court to admit all relevant evidence in the retrial of defendant on the burglary conviction?

"II. Was it proper for the district court to disallow evidence of the acquittal of larceny in the first trial during the second burglary trial?"

On February 9, 1987, Eatherton was charged with the crimes of burglary and larceny. The trial for these offenses was held in June of 1987. The jury found him guilty of the crime of burglary, but not

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Theodore B. D'Arcy, Student Intern., for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Robert A. Nicholas, Sr. Asst. Atty. Gen., for appellee.

Before CARDINE,* C.J., and THOMAS, URBIGKIT, GOLDEN and MACY, JJ.

THOMAS, Justice.

The primary issue for us to resolve in this case is whether, in a criminal trial, the prosecution must be foreclosed from introducing evidence to establish one or more of

* Chief Justice at time of oral argument.

guilty of the crime of larceny. Eatherton then appealed the burglary conviction, and we reversed the conviction and remanded the case for a new trial because of error in the failure of the trial court to give an instruction on the lesser included offense of criminal entry. *Eatherton v. State*, 761 P.2d 91 (Wyo.1988).

Prior to the new trial, Eatherton submitted a motion in limine in which he sought an order that the State be prohibited from presenting or eliciting any evidence relating to the fact that any money was taken during the burglary. In the motion, Eatherton contended that the evidence should not be permitted because of his earlier acquittal of the charge of larceny. Subsequently, Eatherton presented another motion seeking an order that the State be prohibited from presenting or eliciting any testimony or other evidence relating to his earlier conviction on the charge of burglary that had been reversed by this court. The trial court granted this latter motion, but it denied the motion relating to evidence of the theft of money, reasoning that the facts presented at the first trial were common to both of the crimes that were charged. The court also ruled that the fact of money being taken was relevant to the issue of intent on the crime of burglary. In making this ruling, the court made the comparison required by Rule 403, W.R.E., and determined that the probative value of the evidence of money being taken did outweigh its prejudicial effect. In addition to these rulings, the court ruled that it would not admit any evidence concerning the acquittal on the charge of larceny. That ruling was premised on the provisions of Rule 403.

The evidence submitted at the second trial paralleled quite closely the evidence at the first trial. About 3:00 A.M., on February 8, 1987, Eatherton went to the home of Judy Shaffer in Newcastle, Wyoming and asked to see Jerry Ellis. Eatherton brought along a bottle of peppermint schnapps, which he shared with Ellis. Between 4:00 A.M. and 4:30 A.M., the three of them went in Shaffer's automobile purportedly to drive to Camp in the Trees. They did not proceed directly to their destination,

however, because Eatherton asked Shaffer if she would first stop at the house of a woman whom he wanted to see. At Eatherton's direction, Shaffer drove to the corner of Seventh and Sunset Streets and, after requesting Shaffer and Ellis to wait for him, Eatherton left the automobile. Upon his return, he told Shaffer to drive to the Short Stop store to purchase some gasoline. A short time after that was accomplished, they returned to the Short Stop store to borrow a flashlight because Eatherton said he had lost his wallet somewhere. The three then retraced their route searching for the wallet, went back to return the flashlight, and then drove back to Seventh and Sunset Streets where Eatherton, again, left the car. After waiting a few minutes, Shaffer and Ellis drove away without him.

The victim and a neighbor, who testified at the trial, both live near the corner of Seventh and Sunset Streets. The neighbor described herself as a light sleeper and stated that she heard a vehicle driving around the neighborhood early in the morning on February 8, 1987. She looked out her window, saw the vehicle stop, and observed someone getting into it. She decided that this was suspicious activity and called the police. Still later, she saw the same vehicle return and the same person get out of the car but, in this instance, that person walked up the steps to the victim's house. After that, she saw that individual run away from the victim's house.

The victim testified that he was awakened, about 6:00 A.M. on February 8, 1987, and saw someone standing in the doorway of his bedroom. He identified that person as Eatherton. The victim testified that Eatherton was holding the victim's pants, either looking at them or attempting to get something out of them. Apparently, Eatherton then realized that the victim had seen him standing there, and Eatherton raised the pants as if to cover his face and ran from the house. The victim got his pistol, ran out of his house and, upon seeing Eatherton running down the street, yelled at him to halt and fired a warning shot. He testified that his wallet,

which had contained $600 in cash, was missing.

The night clerk at the Short Stop left the store a short time later. As she was leaving, she saw a man in the alley who was dressed the same as Eatherton, whom she had seen twice when he came into the Short Stop earlier that morning. At about that same time, a Newcastle police officer stopped Shaffer's automobile while investigating the suspicious vehicle report submitted by the neighbor. Shaffer reported to the police officer that Eatherton had been with her and Ellis, but they had dropped him off in the vicinity of the victim's house.

■ The retrial in this case occurred on January 10 and 11, 1989, and the jury at the second trial, again, found Eatherton guilty of burglary.[1] Following his conviction, Eatherton was sentenced to a term of seven to ten years in the state penitentiary with credit to be allowed for time previously served. The court also ordered Eatherton to pay $600 in restitution to the victim and $50 to the Victims of Crime fund.

■ In presenting his argument on the first issue, Eatherton emphasizes the fact of the prior acquittal of the charge of larceny and argues that an analysis of the jury verdict demonstrates the jury found no larceny occurred. While Eatherton asserts cases involving the concept of double jeopardy, it is clear that the ground for his contention that it was improper to admit the victim's testimony about the missing money is the theory of criminal collateral estoppel. According to the doctrine of collateral estoppel, when an issue of ultimate fact once has been determined by a valid and final judgment, that issue cannot be relitigated in any future lawsuit involving the same parties. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The Supreme Court also noted that the doctrine of collateral estoppel, as a derivation from civil law, is applied in the criminal law as ancillary to the double jeopardy protection of the Constitution of the

United States. *Ashe*, 397 U.S. at 445–46, 90 S.Ct. at 1195. That protection, articulated in the Fifth Amendment to the Constitution of the United States of America, is also encompassed by Wyo. Const. art 1, § 11.

In *Ashe*, the Supreme Court of the United States adopted the following process to determine when collateral estoppel will foreclose the relitigation of an issue in the criminal context:

> " * * * Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' * * * The inquiry 'must be set in a practical frame and viewed with an eye to all circumstances of the proceedings.' *Sealfon v. United States*, 332 U.S. 575, 579 [68 S.Ct. 237, 92 L.Ed. 180 (1948)]." *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194.

In espousing this concept, the court noted that the invocation of collateral estoppel in criminal cases must be approached with realism and rationality.

■ Our situation is different from the cases upon which Eatherton relies because we are not confronted with a double jeopardy question. Eatherton's retrial on the burglary charge does not constitute double jeopardy since the successful appeal of a conviction on any claim of error in connection with the trial proceedings other than insufficiency of the evidence does not serve to bar retrial. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). Our only concern is with the effect of collateral estoppel upon the introduction of the evidence of the taking of the wallet and the money. The number of appellate decisions addressing the concept of collateral estoppel is indeed extensive. *See, e.g.,* An-

---

**1.** In accord with our reversal of Eatherton's first burglary conviction, the jury was instructed on the lesser included offense of criminal entry and given the choice of finding Eatherton not guilty, guilty of burglary, or not guilty of burglary but guilty of criminal entry.

notation, *Modern Status of Doctrine of Res Judicata in Criminal Cases*, 9 A.L. R.3d 203 (1966). Even so, neither Eatherton nor the State has cited a case involving the same dynamics as this case.

Our own research has disclosed only one case similar in tenor and involving these factors:

(1) the defendant was tried upon multiple charges arising out of a single set of circumstances;

(2) he was tried on all the charges at a common trial;

(3) the jury found the defendant guilty on at least one of those charges but acquitted the defendant on some of the charges;

(4) the defendant's convictions were reversed and remanded for retrial; and

(5) facts common to the charge being retried and the charge on which the defendant was acquitted were presented in evidence at the second trial.

This was the scenario in *People v. Goodman*, 69 N.Y.2d 32, 511 N.Y.S.2d 565, 503 N.E.2d 996 (1986). In that case, Goodman originally was charged with murder, robbery, grand larceny, burglary, and criminal possession of a weapon but, at trial, the jury convicted him only on the larceny charge. That conviction then was reversed on appeal.

In the second trial, over Goodman's objections, the prosecution was permitted to present evidence that the victim had been beaten to death, that Goodman had made statements before the crime that he intended to steal the victim's rings and that he would kill her if necessary to accomplish that end, and that Goodman, at a time close to the murder, had blood on his hands and his clothes. *Goodman*. Goodman was convicted a second time on a charge of larceny. The New York Court of Appeals upheld his conviction, concluding that the admission of the challenged evidence was not improper and explaining, in its decision, the difficulty in determining the basis of the decision of a jury in a mixed verdict case. That court said:

"In the case of a mixed verdict, the defendant has been acquitted by the jury of some of the charges in a multicount indictment but, at the instance of defendant, the conviction has been set aside because of trial error. In that situation, the People are not foreclosed by either double jeopardy or collateral estoppel concerns from reprosecuting the defendant on the charge which resulted in conviction. Acquittal on the joined charges does not give rise to a determination of an 'ultimate fact' which would bar prosecution because manifestly, unless the verdict is repugnant or inconsistent, the jury could not have found favorably to defendant on an element of the crime of which it convicted him. (*see*, *United States v. Jones*, 404 F.Supp. 529, 544, *aff'd*, 538 F.2d 321 (3rd Cir.)).

\* \* \* \* \* \*

"Application of the collateral estoppel doctrine requires that the court determine what the first judgment decided and how that determination bears on the later judgment (*United States v. Mespoulede*, 597 F.2d 329, 333 (2nd Cir. [1979]), *supra; United States v. Kramer*, 289 F.2d 909, 913 (2nd Cir. [1961]), *supra; see, Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, *supra*). The rule is easily stated but frequently difficult to implement because the meaning of a general verdict is not always clear and mixed verdicts may, at times, appear inherently ambiguous. Nevertheless, the court must assume the jury reached a rational result (*Ashe v. Swenson, supra*), and a defendant claiming the benefit of estoppel carries the burden of identifying the particular issue on which he seeks to foreclose evidence and then establishing that the fact finder in the first trial, by its verdict, necessarily resolved that issue in his favor (*see*, *United States v. Mespoulede, supra*, at p. 333, and cases cited therein). If he can show no more than that the verdict is ambiguous, he cannot establish that the jury found the evidentiary fact in his favor. The rule is not to be applied with a hypertechnical approach but with realism and rationality by examining all parts of the record of the prior proceed-

ing and concluding from it whether a rational jury could have grounded its decision on an issue other than that which the defendant seeks to foreclose from consideration (*Ashe v. Swenson, supra,* [397 U.S.] at pp. 443–445, 90 S.Ct. at 1194–1195)." *Goodman,* 511 N.Y.S.2d at 570–71, 503 N.E.2d at 1001–02.

The doctrine of collateral estoppel finds its roots in civil law, but there are differences between civil and criminal law that give rise to different policy considerations in applying it. In civil law, the application of the rule of collateral estoppel promotes judicial economy and conserves private resources without unfairness to the litigant against whom estoppel is invoked. *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In the civil case, the issues in dispute are private rights between private litigants. In a criminal case, an important public interest is found in the enforcement of the criminal law accurately and justly while safeguarding the rights of the accused in the process. *Standefer.* The invocation of collateral estoppel in the civil law assumes a "full and fair opportunity" to litigate the issue as to which the doctrine is applied. It is important to remember in a criminal case, however, that the government often does not have the "full and fair opportunity" to litigate.

" * * * Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt * * *; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence * * *; and it cannot secure appellate review where a defendant has been acquitted. * * *.

"The absence of these remedial procedures in criminal cases permits juries to acquit out of compassion or compromise or because of ' "their assumption of a power which they had no right to exercise, but to which they were disposed

through lenity." ' *Dunn v. United States,* 284 U.S. 390, 393 [52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) ], quoting *Steckler v. United States,* 7 F.2d 59, 60 (CA2 1925)." *Standefer,* 447 U.S. at 22, 100 S.Ct. at 2007.

While *Standefer* involved the invocation of non-mutual collateral estoppel, the principles articulated certainly are apropos to this case. There can be no question that, under our law, the state is deprived of the "full and fair opportunity" to litigate in exactly the ways that are described.

Eatherton argues in his appeal that the only possible, logical reason that the jury at his first trial could have acquitted him on the charge of larceny is that its members did not believe he took the victim's wallet and the money. Any determination of the rationale for the jury result in the first trial, however, is at least as difficult as it was for the New York Court of Appeals in reviewing *Goodman.* Our review of this case and the entire record of the prior proceeding, with the appropriate realism, rationality, and practicality, does not demonstrate the reason for the acquittal as being so confined and certain as Eatherton asserts.

■ Verdicts in a criminal case need not be consistent. *Mainville v. State,* 607 P.2d 339 (Wyo.1980). We are not permitted to speculate with respect to the exact rationale, thoughts, or reasoning invoked by a jury in arriving at its decision. *Howell v. Garcia,* 747 P.2d 1140 (Wyo.1987). In an instance such as this, in which the facts are intertwined and manifest a continuum covering the several charges, we cannot identify the jury's rationale with any precision. Too many possibilities exist, and any delineation of the possible reasons for the jury verdict would reveal "the impracticality, if not infeasibility, of adjudging what 'facts' were resolved by the jury in favor of the defendants." *United States v. Mulherin,* 529 F.Supp. 916, 939 (S.D.Ga.1981), *aff'd* 710 F.2d 731 (11th Cir.1983), *cert. denied sub nom Moore v. United States,* 464 U.S. 964, 104 S.Ct. 402, 78 L.Ed.2d 343 (1983), *cert. denied sub nom Hornsby v. United States,* 465 U.S. 1034, 104 S.Ct. 1305, 79

L.Ed.2d 703 (1984). We hold that the trial court properly declined to apply the doctrine of collateral estoppel to the evidence of the victim's wallet being taken simply because of Eatherton's larceny acquittal.

 In so doing, we decline, as did the New York Court of Appeals in *Goodman,* to adopt the evidentiary facts application of the doctrine of collateral estoppel. We recognize that a number of the United States Courts of Appeal have extended the rule of collateral estoppel to foreclose the admission into evidence of any testimony or exhibits that would tend to establish any of the elements of the charge on which the defendant was acquitted. That approach is certainly safe, but it manifests a lack of discernment. We are satisfied that the Supreme Court of the United States did not demand that approach by promulgating *Ashe.* The more precise analysis is to determine whether the challenged evidence could justify in the latter trial a contrary resolution of an issue identical to one found in favor of the defendant in the prior trial, after applying the *Ashe* process. If it could not, then the challenged evidence is nothing more than an evidentiary fact in the second trial and its admissibility is determined according to the usual rules of evidence. We prefer the rule of *Flittie v. Solem,* 751 F.2d 967, 972 (8th Cir.1985), *cert. denied* 475 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986), that "collateral estoppel does not bar relitigation of facts that are evidentiary in the second prosecution." Here it was not necessary in the second trial to establish that Eatherton stole the wallet or the money. The offense of burglary is completed when the unlawful entry is accomplished coupled with an intent to commit larceny or a felony in the premises. *Sears v. State,* 632 P.2d 946 (Wyo.1981); *Mainville.* At the second trial, the testimony of the victim as to the taking was simply evidentiary of the element of intent, a different issue from any involved in the crime of larceny, and it was not foreclosed by the *Ashe* principle of collateral estoppel.

After this case was tried and the majority opinion first was circulated, the Supreme Court of the United States handed down its opinions in *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), and *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). Since the dissent focuses upon *Grady* and, in effect, concludes that *Dowling* has been subsumed by *Grady,* it is necessary to endeavor to harmonize these two cases in order to effect a rational application to this case. As Justice O'Connor noted in her dissent in *Grady,* 110 S.Ct. at 2095, keen discernment is essential to that task. Any reasonably strict view of the doctrine of *stare decisis* demands that the holding of a case be limited by its facts and, when so examined, these two cases are distinguished by their respective *ratio decidendi.* As we perceive the rationale of these cases, *Dowling* is an evidence case invoking the doctrine of collateral estoppel as a component of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. On the other hand, *Grady* is a true double jeopardy case addressing successive prosecutions for the same conduct. Eatherton's trial did not involve a successive prosecution for the conduct originally charged as the crime of larceny. The question presented at Eatherton's second trial was one of admissibility of evidence only. It follows that the controlling authority from the Supreme Court of the United States is *Dowling,* not *Grady.*

*Grady* does not have the effect of ruling that events such as those recounted by the victim in Eatherton's second trial must be treated as though they never happened. The Supreme Court did not really develop any new law in *Grady* with respect to successive prosecutions. Instead, it utilized a rather complex factual situation to explain prior rulings with respect to the protection of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. With respect to evidentiary matters, however, the Court reaffirmed *Dowling,* with the distinction in the two cases perhaps best captured in the following language:

" * * * This is not an 'actual evidence' or 'same evidence' test.[12] The critical in-

quiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding. See *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)." *Grady*, 110 S.Ct. at 2093.

On the same page, n. 12 states, in pertinent part:

" * * * A true 'same evidence' or 'actual evidence' test would prevent the government from introducing in a subsequent prosecution any evidence that was introduced in a preceding prosecution. It is in this sense that we discuss, *and do not adopt*, a 'same evidence' or 'actual evidence' test." (Emphasis added.)

When Eatherton's second trial is examined in the light of *Dowling*, it is clear that there was no violation of his constitutional protection from double jeopardy. Eatherton's prior acquittal of larceny did not determine an ultimate issue in this case. His acquittal of the crime of larceny established only that there was a reasonable doubt as to whether he took and carried away the wallet of the victim or $600 that was in the wallet. In order to introduce the evidence of the victim that his wallet containing $600 was missing after Eatherton fled from the premises, the state did not have to satisfy a reasonable doubt burden. Its burden was to demonstrate relevance to the crime of burglary, a ruling within the discretion of the trial court. To paraphrase *Dowling*, 110 S.Ct. at 672, "Because a jury might reasonably conclude that * * * [Eatherton took the wallet containing $600], even if it did not believe beyond a reasonable doubt that * * * [Eatherton] committed the * * * [larceny] charged at the first trial, the collateral estoppel component of the Double Jeopardy Clause is inapposite."

█ We have no equivocation about the relevancy of the proffered testimony pursuant to Rule 404(b), W.R.E. Rule 404(b) justifies the admissibility of other bad acts for the purposes there set forth which in-

clude establishing "intent." Furthermore, the evidence was admissible simply because it was needed to permit the relation of a complete account of the events. The case of *Crozier v. State*, 723 P.2d 42 (Wyo. 1986), justifies the admission of other bad acts for that purpose. Such evidence is admissible so long as its probative value outweighs its prejudicial effect, and the acquittal, by itself, does not cause the evidence to be inadmissible, but is only a factor to be evaluated in determining the weight of its probative value against its prejudicial effect. *United States v. Van-Cleave*, 599 F.2d 954 (10th Cir.1979); *United States v. Burkhart*, 458 F.2d 201 (10th Cir.1972). The record in this case demonstrates quite plainly that the trial court took the acquittal into its consideration in performing the appropriate balancing.

█ Since we have decided that the evidence of the theft of the wallet and money was not foreclosed under the doctrine of collateral estoppel, we must address Eatherton's second contention that the district court should have permitted him to introduce evidence of his acquittal on the larceny charge. The trial court directed both Eatherton and the State not to mention the earlier litigation. In making that ruling, the Court relied upon Rule 403, W.R.E., which authorizes the court to exclude certain relevant evidence if, among other reasons, the court concludes that the evidence will tend to mislead the jury or confuse the issue. In this instance, the evidence of the acquittal could have both misled the jury and confused the issues since, as we have explained previously, the considerations that induced the jury to reach its verdict cannot be identified with any degree of certainty. *Nordgren v. United States*, 12 Alaska 671, 181 F.2d 718 (9th Cir.1950). Our rule is that a trial court is vested with discretion to determine whether evidence should be admitted and, in the absence of an abuse of discretion, we will not reverse a conviction because of a refusal to receive evidence. *Jackson v. State*, 624 P.2d 751 (Wyo.1981), *cert. denied* 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981).

Eatherton's argument focuses on the policy considerations with respect to admitting such evidence. He does not argue, nor in any way demonstrate, that the trial court abused its discretion by the ruling that it made. For this reason, we decline to disturb the ruling of the trial court which prohibited the introduction of the evidence of acquittal. From the record, we cannot discern what evidence Eatherton might have offered which would not also have encompassed the conviction of burglary. We do note an additional concern that must at least be inferred from the ruling of the trial court. If Eatherton had been permitted to present evidence of the acquittal of larceny, this well could have opened the door to permitting the State to establish the prior burglary conviction that had been overturned on appeal. *See Bennett v. State,* 794 P.2d 879 (Wyo.1990); *Pena v. State,* 792 P.2d 1352 (Wyo.1990); *Sanville v. State,* 593 P.2d 1340 (Wyo.1979). It was in ruling on Eatherton's motion to prohibit any evidence of the conviction the trial court ruled, on its own motion, that evidence of the acquittal would also be prohibited. Without regard to the prejudicial effect of the burglary conviction, if the court had permitted the evidence that Eatherton argues was erroneously excluded, the effect of that ruling would have been a denial of Eatherton's own motion.

■ We emphasize that this decision does not stand for the proposition that evidence of a prior acquittal is never admissible. If the party offering that evidence can demonstrate its relevance, the trial court may receive evidence of an acquittal if the court determines that its probative value outweighs any other reasons stated in Rule 403, W.R.E., which would require the evidence to be excluded. Rules 401, 402, W.R.E. *See, e.g., State v. Feela,* 101 Wis.2d 249, 304 N.W.2d 152 (Wis.App. 1981), *overruled in part on other grounds sub nom State v. Pharr,* 115 Wis.2d 334, 340 N.W.2d 498 (1983); *State v. Tarman,* 27 Wash.App. 645, 621 P.2d 737 (1980). The thrust of our decision is no more than that the admission into evidence of proof of an acquittal of a prior crime is within the exercise of sound discretion by the trial court and, in the absence of an abuse of discretion, its ruling will not be disturbed.

The judgment and sentence are affirmed.

URBIGKIT, C.J., and MACY, J., filed dissenting opinions.

URBIGKIT, Chief Justice, dissenting.

Before initial circulation of this dissent and thereafter until a final draft had been prepared, the majority had included consideration of neither *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), published January 10, 1990, nor *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), published May 29, 1990. After the majority opinion has since been redrafted to recognize the existence of those compelling decisions, the author now ignores *United States v. Felix,* 926 F.2d 1522 (10th Cir. 1991) which is also directly applicable to the constitutional inquiry this case presents.

In present text, the majority misapplies the principle of *Dowling* and misstates the scope of *Grady.* In direct result, this decision violates the double jeopardy guarantee expressed in *Grady,* 110 S.Ct. at 2087 and the criminal collateral estoppel component of double jeopardy expressed in *Dowling,* 110 S.Ct. 668 and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The conduct used to prove an "intent to commit larceny" to prove burglary was the same conduct used unsuccessfully in Eatherton's earlier larceny prosecution, in which Eatherton was acquitted. Since this court chooses to disregard U.S. Const. amend. V and Wyo. Const. art. 1, § 11, I must respectfully dissent.

I.

DOUBLE JEOPARDY

The majority suggests there is no double jeopardy question by stating, "Eatherton's retrial on the burglary charge does not constitute double jeopardy since the successful appeal of a conviction on any claim of error in connection with the trial proceedings other than insufficiency of the

evidence [1] does not serve to bar retrial." *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Factually, the majority's entire thesis is misdirected because Eatherton did not challenge his retrial for burglary, he challenged the way in which his second burglary conviction was achieved by ignoring constitutional double jeopardy preclusions. He remonstrates that the prosecutor may not use conduct for which Eatherton was already acquitted to establish an essential element of burglary. I agree that the prosecutor could re-prosecute Eatherton for burglary without necessarily offending either double jeopardy or criminal collateral estoppel, but he may not do so by the use of evidence to prove *conduct for which* Eatherton had once been placed in jeopardy and, in fact, then acquitted (or convicted) of guilt on that particular charge. *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *State v. Williams,* 565 So.2d 881 (Fla.App.1990).

In *Grady,* 110 S.Ct. at 2087, the United States Supreme Court held that the federal "Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Whether the prosecutor established the "intent to commit larceny" element of burglary by proving conduct for which Eatherton had been already acquitted is dispositive. Under Wyoming law, a person commits burglary [2] upon entering a structure or vehicle with an intent to commit larceny [3] or any other felony. W.S. 6–3–301(a). The re-prosecution preclusion of *Grady* was violated because Eatherton's burglary conviction was established, in part, by proof of the identical *conduct* for which he had already been tried and acquit-

ted. *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

In his first trial, Eatherton was tried for larceny and burglary. The prosecutor sought to prove Eatherton's guilt to the larceny charge by contending specific conduct—that Eatherton stole $600 from Cable Jones. To that end, Jones testified that he awoke to find Eatherton in his bedroom holding Jones' pants. Jones said he soon discovered that his wallet and over $600 were missing. That testimony was the sole evidence used to support the larceny charge. Eatherton was acquitted of larceny, but convicted of burglary. That burglary conviction was reversed and remanded for a new trial because the trial court failed to instruct the jury on criminal entry as a lesser included offense. *Eatherton v. State,* 761 P.2d 91, 94 (Wyo.1988).

In the burglary retrial, the prosecutor again sought to establish the "intent to commit larceny" element of burglary by proving Eatherton committed larceny. In his opening statement, the prosecutor said Jones would be called to testify that he awoke to find Eatherton holding up Jones' pants shortly before he discovered his wallet, containing $600, missing from those pants. Jones did testify that he awoke to find Eatherton in his bedroom holding the pants and that he soon discovered his wallet and over $600 were missing. At one point in his closing argument, the prosecutor said "[t]he next element of the burglary is that he entered the occupied structure with the intent to steal." To establish that element, the prosecutor again went back over Jones' testimony to the effect that Jones awoke to find Eatherton rifling through Jones' pants and that after Eatherton had left, Jones discovered his wallet and over $600 dollars were gone.

Eatherton had been acquitted of larceny in the first trial, but the prosecutor used

---

1. See *Harvey v. State,* 774 P.2d 87 (Wyo.1989) for the proposition that a reversal based on speedy trial violations also prohibits retrial.

2. W.S. 6–3–301(a) provides that "[a] person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein."

3. W.S. 6–3–402(a) provides that "[a] person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny."

the conduct he had presented unsuccessfully during the larceny trial to establish the "intent to commit larceny" element of burglary in the second burglary trial. When the prosecutor sought to prove conduct for which Eatherton had already been acquitted in order to establish an essential element of burglary, *Grady* becomes relevant and legally determinative in application of the supremacy clause of the United States Constitution and its adaptation in the recognition of supremacy and Wyo. Const. art. 21.

### Ordinances

\* \* \* \* \* \*

The following article [sections] shall be irrevocable without the consent of the United States and the people of this state:

**§ 24. State part of United States.**

The State of Wyoming is an inseparable part of the federal union and the constitution of the United States is the supreme law of the land.

Wyo. Const. art. 21.

## II.

### CRIMINAL COLLATERAL ESTOPPEL

In *Ashe*, the United States Supreme Court incorporated collateral estoppel into the Fifth Amendment double jeopardy guarantee and indicated collateral estoppel prevents an ultimate fact that has been determined by a valid and final judgment from being relitigated by the prosecution. In *Dowling*, 110 S.Ct. 668, the United States Supreme Court reaffirmed *Ashe* but refashioned the *Ashe* standard of review by placing the burden on the defendant to demonstrate that the relitigated issues had been decided in the first proceeding and held that collateral estoppel is inapplicable where the prior acquittal did not determine an ultimate issue in the *present* case or where the litigated issue presented in a subsequent action was governed by a lower standard of proof. Eatherton met his burden by demonstrating that the re-litigated issue, whether he stole from Jones, was

decided in the first trial and the *Dowling* exceptions to *Ashe* are inapplicable. *Ashe* should control. *Com. v. Zimmerman*, 498 Pa. 112, 445 A.2d 92 (1981). *Cf. Com. v. Harris*, 582 A.2d 1319 (Pa.Super.1990).

Whether the larceny acquittal determined an ultimate fact in the retried burglary is critical to criminal collateral estoppel under both *Ashe* and *Dowling*. The majority finds no violation to criminal collateral estoppel and advances *Flittie v. Solem*, 751 F.2d 967, 972, *reh'g* 775 F.2d 933 (8th Cir.1985), *cert. denied* 475 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986) and *People v. Goodman*, 69 N.Y.2d 32, 511 N.Y.S.2d 565, 503 N.E.2d 996, 1001 (1986) to support that proposition. In misapplication, the majority fails to make visible the distinction between ultimate facts and evidentiary facts. *Ashe*, 397 U.S. 436, 90 S.Ct. 1189; *Com. v. Jones*, 274 Pa.Super. 162, 418 A.2d 346, *cert. denied* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980).

*Flittie*, 751 F.2d at 972, and *Goodman*, 511 N.Y.S.2d at 570, 503 N.E.2d at 1001, acknowledge that criminal collateral estoppel bars re-litigation of ultimate facts but not evidentiary facts and that only the introduction of evidentiary facts were involved. *Flittie* relies upon Note, *Collateral Estoppel Effect of Prior Acquittals*, 46 Brooklyn L.Rev. 781, 788–90 (1980), to distinguish between ultimate and evidentiary facts by defining ultimate facts as facts needed to support a final judgment and defining evidentiary facts as facts not needed to support a final judgment. *Id.* at 784.

The Tenth Circuit Court of Appeals recognized *Ashe* to foreclose ultimate facts from being re-litigated. In *United States v. Sutton*, 732 F.2d 1483, 1489 (10th Cir. 1984), *cert. denied* 469 U.S. 1157, 105 S.Ct. 903, 83 L.Ed.2d 919 (1985), the defendant was acquitted of fifteen counts but was convicted of conspiracy to obstruct justice. The jury was unable to reach a verdict on his obstruction of justice charge and a mistrial was declared. Sutton was retried and convicted. In his appeal, Sutton argued the government was estopped from again proceeding against him on the two counts

under *Ashe*, because the trial court had entered judgments of acquittal on the first fifteen counts of the original indictment. The Tenth Circuit Court of Appeals indicated *Ashe* was inapplicable because the defendant's acquittals determined no issues of ultimate facts necessary to the conviction in the subsequent trial. *See also Pinkney v. Keane*, 920 F.2d 1090, 1097 (2nd Cir.1990).

Did the larceny acquittal determine an ultimate issue in the retried burglary? Without the proof that Eatherton stole Jones' wallet and money, there was no proof of an "intent to commit larceny." "Intent to commit larceny" was necessary to support the second burglary conviction. In other words, the ultimate fact in the first proceeding was determinative in the second proceeding and was barred from re-litigation under criminal collateral estoppel. The jury could not have grounded the larceny acquittal upon an issue other than Eatherton did not steal from Jones. The only rationally conceivable issue in dispute before the first jury which deliberated the larceny charge was whether Eatherton had robbed Jones. That first jury determined he had not. That was the conduct of which Eatherton was acquitted. Poulin, *Collateral Estoppel in Criminal Cases: Reuse of Evidence After Acquittal*, 58 U.Cin.L. Rev. 1 (1989).

"[T]he state possesses prosecutorial resources far in excess of those the individual may marshall for his or her defense, and * * * if the state is permitted to re-prosecute an individual without limitation it may achieve through attrition an advantage having nothing to do with the merits of its case." *Randall by Handwerker v. Rothwax*, 161 A.D.2d 70, 560 N.Y.S.2d 409, 411 (1990).

## III.

### GRADY V. CORBIN IS DECISIVE

Explicit and specific precedent should require this court to hold that the behavior of the prosecutor violated both double jeopardy under *Grady*, 110 S.Ct. at 2087 and criminal collateral estoppel under *Ashe*, 397 U.S. 436, 90 S.Ct. 1189.

In a case since argued before this court which also involved the *Grady* issue, the attorney general suggested, as this court now apparently accepts by this majority opinion, that the United States Supreme Court opinion in *Grady* was "difficult to understand", a "muddled up piece of logic", "confused" and perhaps questionable in future validity. If that is the foundation upon which this decision is structured, it sits not even on sand but only on imagination. *Grady* was a constitutional case and is now controlling. Wyo. Const. art. 21, § 24.

### A. United States Supreme Court

Summary action by the United States Supreme Court has followed both state and federal intermediate court lack of application of its double jeopardy delineation, whether for inattention, inadvertence or that the opinion was issued before *Grady*. In the brief time since *Grady* was decided, there have appeared four cases upon which summary reversal was entered, *Ellis v. Oklahoma*, — U.S. —, 111 S.Ct. 504, 112 L.Ed.2d 517 (1990); *Rivera–Feliciano v. United States*, — U.S. —, 111 S.Ct. 377, 112 L.Ed.2d 391 (1990); *Martin v. Virginia*, — U.S. —, 111 S.Ct. 28, 112 L.Ed.2d 7 (1990); and *Tidwell v. United States*, — U.S. —, 111 S.Ct. 28, 112 L.Ed.2d 6 (1990), *cert. denied* — U.S. —, 111 S.Ct. 998, 112 L.Ed.2d 1081 (1991), and a fifth where a significant discussion in dissent to the order denying the petition for writ of certiorari was provided, *Parker v. Arkansas*, — U.S. —, 111 S.Ct. 218, 112 L.Ed.2d 186 (1990) (petition for writ of certiorari denied). *See The Supreme Court, 1989 Term*, 104 Harv.L.Rev. 40, 149 (1990).

A current Westlaw search also reveals, however, that attention has not been neglected by all intermediate, appellate and federal trial courts of which thirty-one citations are, at this date, found. Similar recognition of the decisive effectiveness of the case is found in a substantial number of

very recent state court decisions which total fifty-five to date.

This court should step back, recognize and acknowledge that under the supremacy clause and within the clear preclusion of *Grady*, this appeal requires reversal. A brief walk through some of the more significant cases, including action of the United States Supreme Court, provides confirmatory certainty. The current attention given by the United States Supreme Court is seen in the disposition orders entered this term since the *Grady* opinion.

*Tidwell*, 111 S.Ct. at 28:

On petition for writ of certiorari to the United States Court of Appeals for the Sixth Circuit. * * * The judgment is vacated and the case is remanded to the United States Court of Appeals for the Sixth Circuit for further consideration in light of *Grady v. Corbin*, * * *.

*Martin*, 111 S.Ct. at 28:

On petition for writ of certiorari to the Supreme Court of Virginia. * * * The judgment is vacated and the case is remanded to the Supreme Court of Virginia for further consideration in light of *Grady v. Corbin*, * * *.

*Rivera–Feliciano*, 111 S.Ct. at 377:

On petition for writ of certiorari to the United States Court of Appeals for the First Circuit. * * * The judgment is vacated and the case is remanded to the United States Court of Appeals for the First Circuit for further consideration in light of *Grady v. Corbin*, * * *.

*Ellis*, 111 S.Ct. at 504:

On petition for writ of certiorari to the Court of Criminal Appeals of Oklahoma. * * * The judgment is vacated and the case is remanded to the Court of Criminal Appeals of Oklahoma for further consideration in light of *Grady v. Corbin*, * * *.

*Cf. Parker*, 111 S.Ct. 218.[4]

### B. *Other Federal Cases*

Significant decisions of the courts of appeal and federal district courts since the development of *Grady* have also developed. *United States v. Scarpa*, 913 F.2d 993 (2nd

---

**4.** *United States v. Garcia–Rosa*, 876 F.2d 209 (1st Cir.1989), *cert. denied sub nom. Alvarez v. United States*, —— U.S. ——, 110 S.Ct. 742, 107 L.Ed.2d 760, *cert. granted and judgment vacated sub nom. Rivera–Feliciano v. United States*, —— U.S. ——, 111 S.Ct. 377, 112 L.Ed.2d 391 (1990), from which the petition of Angel Rivera–Feliciano was taken, first surfaced in 1989 and involved charges of four drug related counts to which some pleas were entered and other counts dismissed. He was thereafter re-indicted on events which he claimed involved the prior plea conviction and sentence. Double jeopardy was argued unsuccessfully and was followed by conviction and an extended sentence.

*Tidwell*, 111 S.Ct. 28, came from a decision of the Sixth Circuit Court of Appeals, *United States v. Tidwell*, 896 F.2d 554 (6th Cir.1990), entered by memorandum without published opinion from the Western District of Kentucky. *Ellis*, 111 S.Ct. 504, came from an unpublished opinion by the Court of Criminal Appeals, State of Oklahoma. After the defendant was first sentenced for possession of a shotgun used in a shooting, he was subsequently prosecuted for murder in the first degree and shooting with the intent to kill. The *Blockburger* concurrent prosecution test was in essence applied to reject the claimed double jeopardy defense. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Martin*, 111 S.Ct. 28, was a petition for a writ of certiorari from the Supreme Court of Virginia which had denied consideration as had apparently the Court of Appeals, both by unpublished decisions. A course of successive prosecution was involved. The gamut of charges ran from public drunkenness to obstruction of justice, carrying a concealed weapon, attempted capital murder of a law enforcement officer, and use of a firearm in the commission of a felony.

The fifth case, *Parker*, 111 S.Ct. 218, where the petition for writ of certiorari was denied, arose from a murder conviction in Arkansas state court. *Parker v. State*, 300 Ark. 360, 779 S.W.2d 156 (1989); *Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987). On first trial, Parker was convicted of two counts of capital felony-murder, two counts of attempted first-degree murder, two counts of burglary, kidnapping and attempted capital murder with death penalty imposed. The capital murder convictions were reversed and he was retried. He was again convicted of capital murder and again given the death penalty. The Supreme Court of Arkansas held that the reversal was for trial error and not evidentiary insufficiency in denying a double jeopardy preclusion. The point of contention in Justice Marshall's dissent to the denial of certiorari related to the question of whether the initial reversal was based on insufficiency of evidence with the further conclusion that if true, "the State would not be free to prosecute petitioner for the same offense by merely charging him under a different statute * * *." *Parker*, 111 S.Ct. at 219 n. 3 (citing *Grady*).

Cir.), *cert. denied* — U.S. ——, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990); *United States v. Pungitore*, 910 F.2d 1084 (3rd Cir.1990), conviction affirmed on the basis that the dual sovereignty doctrine did not change with the *Grady* decision, successive prosecution is not the same offense and thesis that first prosecution of predicate acts does not foreclose subsequent RICO prosecution for CCE (Continuing Criminal Enterprise); *United States v. Russo*, 906 F.2d 77 (2nd Cir.1990), conviction reversed; and *see likewise United States v. Gonzalez*, 921 F.2d 1530 (11th Cir.1991), based on *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764, *reh'g denied* 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985); *United States v. Link*, 921 F.2d 1523 (11th Cir. 1991); and *United States v. Esposito*, 912 F.2d 60 (3rd Cir.1990), *cert. denied* — U.S. ——, 111 S.Ct. 806, 112 L.Ed.2d 1032 (1991) as cases based on RICO and CCE (Continuing Criminal Enterprise). The court in *United States v. McKinney*, 919 F.2d 405 (7th Cir.1990), involving concurrent prosecution, recognized that the *Grady* defense would not be available because the test was a modification of *Blockburger* only when applied to consecutive prosecutions. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

One of the more detailed developments of the *Grady* rule is presented in *United States v. Gambino*, 920 F.2d 1108, 1112 (2nd Cir.1990) (footnote omitted):

> *Grady* significantly altered the jurisprudential landscape of double jeopardy, supplementing the traditional inquiry required by *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and its progeny. According to *Grady:* "[T]he Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has

already been prosecuted." *Grady*, 110 S.Ct. at 2087. The Court rejected a "same evidence" approach, *id.* at 2093 n. 12, and instead focused on the government's use of previously prosecuted conduct "to establish an essential element" of the offense charged in the second prosecution, *id.* at 2087.

This "same conduct" test applies equally to successive prosecutions in "single transaction" cases, such as *Grady* itself, and conspiracy cases. *United States v. Calderone*, 917 F.2d 717, 721 (2d Cir.1990). In *Calderone*, a divided panel held that defendants' acquittal on charges of participating in a wide-ranging, multi-drug conspiracy barred a subsequent prosecution alleging a narrower, single-drug conspiracy. The Court reasoned that the "conduct that constitutes an offense" in a conspiracy prosecution is that conduct from which the jury may infer the existence of an agreement. *Id.* at 721. It concluded that "[u]nder *Grady*, this conduct may not be prosecuted a second time in order to establish an 'agreement' that differs from the first crime only in that the indictment happens to describe it differently." *Id.* at 721. Accordingly, the *Korfant* factors applied by the district court are inadequate to satisfy double jeopardy concerns after *Grady*. *Id.* at 721 ("To the extent that *Korfant* and our other opinions in this area conflict with *Grady*, they are no longer good law.").[5]

In *United States v. Calderone*, 917 F.2d 717, 718 (2nd Cir.1990), cited in *Gambino*, the "same conduct" test of *Grady* barred all counts of the indictment involving charges in a "smaller" conspiracy after prior acquittal in a "larger" conspiracy:

> [T]he "same conduct" test that is now to be applied to double jeopardy claims arising in the context of successive prosecutions, *see Grady v. Corbin*, — U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548

**5.** The outdated *Korfant* factors were:

"(1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the

alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies."
*Gambino*, 920 F.2d at 1111 (quoting *United States v. Korfant*, 771 F.2d 660 (2nd Cir.1985)).

(1990), bars prosecution of all counts of the present indictment. We therefore reverse the order of the district court and remand with a direction to dismiss the indictment.

The essential procedural mechanism for assessing double jeopardy claims prior to a second trial was considered in *United States v. Garcia*, 919 F.2d 881, 886–87 (3rd Cir.1990) in the context of *Grady*, 110 S.Ct. at 2094 n. 14.

> The Courts of Appeals, which long ago recognized that the Double Jeopardy Clause requires more than a technical comparison of statutory elements when a defendant is confronting successive prosecutions, have adopted an essential procedural mechanism for assessing double jeopardy claims prior to a second trial. All nine federal Circuits which have addressed the issue have held that "when a defendant puts double jeopardy in issue with a non-frivolous showing that an indictment charges him with an offense for which he was formerly placed in jeopardy, the burden shifts to the government to establish that there were in fact two separate offenses." * * * This procedural mechanism will ensure that the test set forth today is in fact "implementable," * * *.

*Id.* at 2094 n. 14. The *Garcia* court, however, in considering a sentencing issue, determined that the initial burden of the defendant had not been met.

Illustrative of the effect of the present habeas corpus standard for successive prosecution is *Russo*, 906 F.2d 77, where the defendant was initially prosecuted under RICO conspiracy and acquitted, and one of the predicate acts alleged became an identical obstruction of justice charge for which he was later tried and convicted. The government conceded the prosecution of the obstruction of justice charge was inconsistent with the conduct test of *Grady* and the case was resolved by a consequent prosecutorial *nolle prosequi* and court approval by reversal of the judgment of conviction.

The most significant current federal circuit court decision is *Felix*, 926 F.2d 1522.

*Felix* is particularly significant in that the author of the opinion is Chief Judge Holloway, the case is found in the Tenth Circuit Court of Appeals to which circuit the federal court of this state belongs. Additionally, the case develops consideration of conspiracy in following the Second Circuit Court of Appeals in *Calderone*, 917 F.2d 717 and distinguished the posture of the Third Circuit Court of Appeals taken in *Pungitore*, 910 F.2d 1084.

After reviewing the facts of *Grady*, Judge Holloway analyzed:

> The [United States Supreme] Court barred Corbin's prosecution, using a two-step, double jeopardy analysis. The first step is the traditional analysis:

> > To determine whether a subsequent prosecution is barred by the Double Jeopardy Clause, a court must first apply the traditional *Blockburger* test. If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred.

*Grady*, 110 S.Ct. at 2090 (citing Brown). The Court noted, however, that the "*Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." 110 S.Ct. at 2092 (quoting *Brown v. Ohio*, 432 U.S. 161, 166–167 n. 6, 97 S.Ct. 2221, 2226 n. 6, 53 L.Ed.2d 187 (1977)). The *Grady* opinion clearly defined a second step to the double jeopardy analysis:

> > Thus, a subsequent prosecution must do more than merely survive the *Blockburger* test. As we suggested in [*Illinois v. Vitale*], the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an "actual evidence" or "same evidence" test. The critical inquiry is what conduct the state will prove, not the evi-

dence the state will use to prove that conduct. * * *

110 S.Ct. at 2093.

*Felix*, 926 F.2d at 1527.

It is apparent and realistically unquestionable that the language of the Tenth Circuit Court of Appeals in *Felix* would require reversal of this case and even the expansively stated dissent would find that Eatherton was improperly convicted on second trial in contravention of double jeopardy preclusions enunciated most recently in *Grady*.

### C. State Decisions

Similarly, *Grady* has not escaped attention in the state court systems. In *Hovey v. Superior Court In and For County of Maricopa*, 165 Ariz. 278, 798 P.2d 416 (1990), a plea and sentence for leaving the scene of a fatal accident foreclosed a subsequent manslaughter indictment.

> Double jeopardy principles are also violated here. The critical inquiry in determining whether the prosecution will prove conduct in the manslaughter charge that constitutes an offense for which the defendant has already pled guilty is what conduct the state needs to prove to satisfy that charge. To prove the manslaughter case the prosecution here would necessarily have to re-prove the accident, the death, and the recklessness involved in causing it and fleeing from it. Double jeopardy bars this repeated proof of the same conduct.

*Id.* 798 P.2d at 419 (citing *Grady* ).

*Cf. Lucido v. Superior Court*, 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223 (1990), where the state first failed to prove the events for parole revocation and subsequently prosecuted the defendant for indecent exposure. The court held that collateral estoppel did not apply without citation to *Grady* which was then generously reviewed by Associate Justice Mosk in dissent. *See Lucido*, 272 Cal.Rptr. at 795 P.2d at 1223.

Wyoming has touched the subject only peripherally in *Simonds v. State*, 799 P.2d 1210 (Wyo.1990), Urbigkit, Justice, specially concurring. Representative cases of other state jurisdictions which recognize the successive prosecution rule of *Grady* include *Gianiny v. State*, 320 Md. 337, 577 A.2d 795 (1990); *Matter of Huff*, 399 Pa. Super. 574, 582 A.2d 1093 (1990) and *Com. v. Labelle*, 397 Pa.Super. 179, 579 A.2d 1315 (1990). *Cf. Manuel v. State*, 85 Md. App. 1, 581 A.2d 1287 (1990), *cert. denied* 322 Md. 131, 586 A.2d 13 (1991) and *Apostoledes v. State*, 83 Md.App. 519, 575 A.2d 792, *cert. granted* 321 Md. 225, 582 A.2d 531 (1990). *See also Scalf v. State*, 573 So.2d 202 (Fla.App.1991); *Anderson v. State*, 570 So.2d 1101 (Fla.App.1990); *People v. Hoskinson*, 201 Ill.App.3d 411, 147 Ill.Dec. 11, 559 N.E.2d 11 (1990); *Harrelson v. State*, 569 So.2d 295 (Miss.1990); *State v. Urban*, 796 S.W.2d 599 (Mo.1990); *State v. Harrington*, 236 Neb. 500, 461 N.W.2d 752 (1990); *Com. v. Kemmerer*, 584 A.2d 940 (Pa.1991); *Com. v. Compana*, 452 Pa. 233, 304 A.2d 432 (1973), *cert. denied* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974); *State v. Magazine*, 393 S.E.2d 385 (S.C.1990); *Ex parte Fortune*, 797 S.W.2d 929 (Tex.Cr.App.1990); and *Low v. Com.*, 11 Va.App. 48, 396 S.E.2d 383 (1990).

For clarity, in response to the present majority decision which recognizes the existence and preeminence of the United States Supreme Court constitutional requirements as a minimum criteria for state court responsibility, I will examine the current body of *Dowling/Grady* case law to demonstrate how this majority misapplies the principles of *Dowling* and misstates the scope of *Grady*.

In *Dowling*, the United States Supreme Court recognized four reasons why *Ashe*, 397 U.S. 436, 90 S.Ct. 1189 and the principles of double jeopardy were not controlling.

1. The disassociated event evidence where there had been a prior acquittal (or conviction) "did not determine an ultimate issue in the present case." *Dowling*, 110 S.Ct. at 672.

2. The burden of proof for present usage of such "bad acts" evidence is "gov-

erned by a lower standard of proof." *Id.* at 672.

3. The difference in burden of proof precludes application of the doctrines of collateral estoppel and res judicata. *Id.* at 673.

4. The preclusive decision in the first prosecution did not necessarily resolve the guilt or innocence which is the subject of prosecution in the second proceeding. *Id.* at 673.

*Dowling,* as we know and as the opinion makes clear, was a disassociative occurrence, "bad acts" evidence inquiry. The perversion provided in the result by the majority's decision develops since the evidence of larceny upon which Eatherton was acquitted in the first trial was directly reused the second time to prove a larceny incident in the burglary. Eatherton was denied the right to provide evidence of even his prior acquittal. It is noteworthy in *Dowling:*

> When [the prior offense victim] left the stand, the District Court instructed the jury that petitioner had been acquitted of robbing [the victim], and emphasized the limited purpose for which [the victim's] testimony was being offered. * * * The court reiterated that admonition in its final charge to the jury.

*Id.* at 671.

I totally reject this majority's conclusion that a defendant should and constitutionally can be denied an opportunity to contest "bad acts" evidence or more accurately substantive evidence of a crime for which he was acquitted and then used again for proof of a crime in a sequential trial with both trials involving the identical occurrence and same charges. *Cf. State v. Miller,* 558 So.2d 1349 (La.App.1990). "The law 'attaches particular significance to an acquittal.'" *Id.* at 1351 (quoting *United States v. DiFrancesco,* 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) and *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978)).

In a sense, it is a side issue since the constitutional infirmity of the majority's decision is absolute but recognizing a misconstruction presented that evidence to prove guilt is now called "bad acts" evidence and that the only difference in first trial was that Eatherton was acquitted of the larceny and, in the second trial, the larceny was used to prove a crime of burglary without being separately charged and without his being provided protection of double jeopardy or collateral estoppel. Furthermore, he was not even given the right to have the jury advised on second time usage that acquittal on first prosecution had occurred. *Cf. Dowling,* 110 S.Ct. 668. *See also Philmon v. State,* 267 Ark. 1121, 593 S.W.2d 504 (1980); *People v. Griffin,* 66 Cal.2d 459, 58 Cal.Rptr. 107, 426 P.2d 507 (1967); *Womble v. State,* 8 Md.App. 119, 258 A.2d 786 (1969); *State v. Calloway,* 268 N.C. 359, 150 S.E.2d 517 (1966); and *State v. Smith,* 271 Or. 294, 532 P.2d 9 (1975).

The California court said it well:

> Our rule [regarding use of bad acts acquitted crime evidence] does not go that far [to require absolute exclusion], but instead is fair to both the prosecution and the defense by assisting the jury in its assessment of the significance of the evidence of another crime with the knowledge that at another time and place a duly constituted tribunal charged with the very issue of determining defendant's guilt or innocence of the other crime concluded that he was not guilty.

*Griffin,* 426 P.2d at 511.

The perversity of this decision is further magnified (see Eatherton's pro se brief) when, in sentence, Eatherton was ordered to make restitution for the return of money for which taking he was acquitted during the first trial and about which this majority says he was not tried in the second proceeding. The sentencing provision provided:

> IT IS THE FURTHER SENTENCE OF THE COURT that the defendant make restitution of the sum of $600.00 to Cable B. Jones pursuant to W.S. § 7–9–103. This Court recommends to the Parole Board that such restitution be

paid before the defendant be released to parole or be made a condition of parole. (Emphasis in original.)

Undoubtedly upset about restitution after acquittal, Eatherton, in his supplemental brief, stated:

The trial court has no jurisdiction to find a person guilty once he has been acquitted by a jury. The right to trial by jury in criminal prosecutions is inviolate and may not be hampered either directly or indirectly. *Arnold v. State,* [76 Wyo. 445] 306 P.2d 368 (Wyo.1957).

With this additional background, it becomes necessary now to consider this majority's discussion of *Dowling* and *Grady.* The case in specific context should be recognized for what it is. In first prosecution, Eatherton was tried for burglary and included larceny within the same occurrence. He was acquitted of larceny and the burglary conviction was reversed for retrial because of an error in denial of a theory of the case, lesser included offense instruction of criminal entry. Criminal entry is burglary absent the specific intent to commit another offense which was, in the prosecutorial approach in both cases, larceny. Upon retrial on the burglary charge, Eatherton was prosecuted with the larceny evidentiary component for which the prior acquittal had been rendered in the first jury verdict.

*Grady,* which follows *Dowling* by only a few months, made clear that *Dowling* facts should confine the *Dowling* decision. *Grady* was second time proof of the direct incidents of the offense and not a similar evidence inquiry. As Justice Brennan said, "[t]he critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Grady,* 110 S.Ct. at 2093. In Eatherton's first trial, the larceny was specifically charged and, in second trial, it became the included offense incident to the charge to prove burglary. Not only was the offense identified to fit within *Grady,* but incidentally, the identical proof for the offense was used as approved only by virtue of the rehearsal which now consists of the first trial where acquittal was rendered.

A close examination of the current *Dowling* cases authored since *Grady* reveal a clear understanding of case characteristics which are based on the original thesis of (a) a disassociated event and (b) different standard of proof. These cases can be grouped either as a Rule 404(b) "bad acts" case using a differentiated event or included within a separate purpose function such as sentencing. Not one of the cases would justify present application of *Dowling* to an intrinsic part of the criminal prosecution occurrence such as the majority tries here to do for affirming the conviction of Eatherton where the prior charge previously used resulted in acquittal. *See Felix,* 926 F.2d 1522.

The test for usage of prior acquittal evidence under the *Dowling* rule was confined to recognition that the disassociated event acquittal " 'did not determine an ultimate issue in the present case.' " *State v. Searles,* 246 Kan. 567, 793 P.2d 724, 733 (1990) (quoting *Dowling,* 110 S.Ct. at 672). *Searles'* defense to his first sequence prosecution was that the charged rapes were accompanied by consent, but the instant case developed from a rape felony murder where consent had no contribution in proof. The prior offenses Rule 404(b) evidence was used for identity proof. A limiting instruction was also appropriately given in *Searles* and the court recognized that an acquittal instruction should have been given but, under those particular circumstances with a limiting instruction immediately provided after the evidence was introduced, only harmless error had been created. "The record shows it was made clear to the jury that Searles had been acquitted of one of the prior charges and the other charge was dismissed following a mistrial." *Searles,* 793 P.2d at 734.

The same principle involving *Dowling* "bad acts" evidence was recognized in *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293, *reh'g denied* 53 Ohio St.3d 706, 558 N.E.2d 62, *cert. denied* — U.S. —, 111 S.Ct. 591, 112 L.Ed.2d 596 (Ohio 1990) where also related to identity. Prior trial acquittal of possession of marijuana when used in a subsequent LSD trial and convic-

tion was similarly resolved under the Rule 404(b) test stated in *Dowling.* *See United States v. Salamone,* 902 F.2d 237 (3rd Cir. 1990), *cert. denied* —— U.S. ——, 111 S.Ct. 685, 112 L.Ed.2d 676 (1991); *People v. Conley,* 804 P.2d 240 (Colo.App.1990) (used for identity proof) and *State v. Agee,* 326 N.C. 542, 391 S.E.2d 171 (1990).

The second general category of *Dowling* cases where the disassociated event was the subject of acquittal and later used in sentencing in a different offense includes *People v. Jackson,* 200 Ill.App.3d 92, 146 Ill.Dec. 100, 557 N.E.2d 1287 (1990), separate proceeding acquittal does not foreclose consideration by the sentencing court. *United States v. Averi,* 922 F.2d 765 (11th Cir.1991) follows an identical application for sentencing since the preponderance of the evidence applies in the second disassociated offense usage. *See also United States v. Fonner,* 920 F.2d 1330 (7th Cir. 1990).

A derivative of the general *Dowling* differentiated offense successive prosecution concept develops when the later prosecution results after the accused had petitioned to sever charged counts and the motion was granted. *People v. Winston,* 200 Ill.App.3d 296, 146 Ill.Dec. 810, 558 N.E.2d 773 (1990). The general concept here stated, following delineation of a two-prong showing: (1) prior resolution; and (2) resolution is inconsistent with the return of a guilty verdict against the defendant in the second prosecution. "This showing must be granted on a practical view of the issue-verdict interrelationship within the totality of the criminal proceedings. *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76." *Id.* at 146 Ill.Dec. at 812, 558 N.E.2d at 775. The defendant's successful motion to sever trial of the charges provides a double jeopardy exclusion. *United States v. Edmond,* 924 F.2d 261 (D.C.Cir. 1991).

*Winston* fits in evaluation with the fact provided in Eatherton where (1) there was a prior acquittal of the offense; and (2) the same charge involving the identical evidence was used for guilt determination in the second trial. The issue verdict interre-

lationship within the totality of the criminal proceeding was complete where exactly the same proof was used on second occasion to try the same general charge. Eatherton, simplistically, is "try, try again."

The disassociated occurrence *Dowling* cases previously illustrated can be differentiated from the entirety of the conduct reprosecution in *Grady* by a number of current cases, none of which have been considered in the majority opinion. The factual relevance is personified in Eatherton with its larceny, burglary continuum. The flavor for the current cases can be observed within the United States Supreme Court summary remand cases described earlier in this dissent, *Ellis,* 111 S.Ct. 504; *Rivera–Feliciano,* 111 S.Ct. 377; *Tidwell,* 111 S.Ct. 28; and *Martin,* 111 S.Ct. 28.

It is interesting to observe that the foundational case on double jeopardy application to the states by the federal courts presents an almost identical fact constituency. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) involved an original prosecution for burglary and larceny with a resulting conviction of burglary and an acquittal of larceny. Upon reversal of the conviction, the State elected to retry the accused on both burglary and larceny with resulting conviction of both. The United States Supreme Court reversed the larceny conviction summarily and also recognized the burglary conviction could have been affected by the double jeopardy violation and consequently remanded the case for consideration of that contingency. The Eatherton court did exactly the same thing in permitting reprosecution of larceny to provide an indispensable ingredient of burglary *as the case was actually tried. Grady,* 110 S.Ct. at 2094.

We ignore what the *Benton* court recognized:

The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence. See *Bartkus v. Illinois,* 359 U.S. 121, 151–155 [79 S.Ct. 676, 695–697, 3

L.Ed.2d 684] (1959) (Black, J., dissenting). As with many other elements of the common law, it was carried into the jurisprudence of this Country through the medium of Blackstone, who codified the doctrine in his Commentaries. "[T]he plea of *autrefois acquit,* or a former acquittal," he wrote, "is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once of the same offence." Today, every State incorporates some form of the prohibition in its constitution or common law. As this Court put it in *Green v. United States,* 355 U.S. 184, 187–188 [78 S.Ct. 221, 223, 2 L.Ed.2d 199] (1957), "[t]he underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." This underlying notion has from the very beginning been part of our constitutional tradition. Like the right to trial by jury, it is clearly "fundamental to the American scheme of justice."

*Benton,* 395 U.S. at 795–96, 89 S.Ct. at 2063 (quoting 4 W. Blackstone, Commentaries 335) (footnotes omitted and emphasis in original).

We are also provided a most recent *Grady* case which is almost identical except the accused was first *convicted* of theft and then tried for the burglary *which included* proof of the underlying offense of theft. The court recognized the theft inclusion in the burglary conviction:

Thus, under the *Blockburger* test, no double jeopardy violation is present. Under the *Grady* test, however, the burglary conviction is barred by the Double Jeopardy Clause.

The parties' stipulation includes the fact that Laviollette was *found guilty of* theft. While the elements of theft are different from the elements of burglary, it is clear from the stipulation that a necessary element of burglary, intent to commit a crime, was established by the prior theft convictions. Because it is clear that the court relied on conduct for which Laviollette had already been convicted, the second prosecution is barred, under *Grady,* by the Double Jeopardy Clause.

*State v. Laviollette,* 60 Wash.App. 579, 805 P.2d 253, 256 (1991). See also the criminal episode as the criteria which was addressed under state law in *State v. Servantes,* 72 Haw. 35, 804 P.2d 1347 (1991).

Any statement that the larceny offense evidence identically presented in the second reprosecution is either "bad acts" Rule 404(b) collateral incident proof or *Crozier v. State,* 723 P.2d 42 (Wyo.1986), a complete story scenario, cannot be described to be anything but a complete mischaracterization. *The larceny proof in Eatherton No. 2 was the larceny proof in Eatherton No. 1 for which he was acquitted. Grady,* 110 S.Ct. 2084; *Benton,* 395 U.S. at 784, 89 S.Ct. at 2056.

In *Felix,* the attempted second prosecution in Oklahoma arose out of the "course of conduct and events" which had been subject to conviction in the earlier Missouri proceeding. As Chief Judge Holloway of the Tenth Circuit Court of Appeals said, the critical inquiry is what conduct the state will prove and does that conduct constitute an offense for which the defendant has already been prosecuted.

*Russo,* 906 F.2d at 78 (quoting *Grady,* 110 S.Ct. at 2085) provides a nolle prosequi resolution by application of the rule "that 'the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct for which the defendant has already been prosecuted.'" The factual involvement in the second prosecution was a charge of obstruction of justice which had been included in the earlier RICO conspiracy for which the defendant had been acquitted. *Gambino,* 920 F.2d 1108 involved

a narcotics charge previously included in the first trial acquittal which was to be included in the second series prosecution. A temporal sequence test was applied to establish when double jeopardy precluded reprosecution. The case discerns that the accused must stop dancing at a sufficient early time. *Id.* at 1113.

In *Calderone*, 917 F.2d 717, the distinguishable scope of *Dowling* and *Grady* was specifically illustrated in recognition that a *Dowling* case was quite different from a *Grady* double jeopardy case. This was illustrated by the special concurrence of Judge Newman in stating that "by recognizing that in *Dowling*, the defendant's conduct in committing robbery A was introduced only as evidence that defendant committed robbery B, not as the entirety of an element of robbery B." *Calderone*, 917 F.2d at 724. *Grady* was "conduct that constitutes an offense for which the defendant has already been prosecuted." *Calderone*, 917 F.2d at 724. The same conduct rule was identified in first acquittal and second trial in a more confined and limited conspiracy. The same conduct test barred reprosecution.

In realism of actual same conduct evidence, it is not possible to have a *Grady* case with more preclusive application than is presented here by the larceny reprosecution of Eatherton. *See also Ex parte Fortune*, 797 S.W.2d 929 for discussion of the same conduct rule. *Cf. Esposito*, 912 F.2d 60 which, although following a different trend than the Second Circuit, would even preclude reprosecution here where the more encompassing crime which was dependent upon the same conduct had been resolved in the earlier prosecution by establishing a general double jeopardy preclusion. *See likewise United States v. Dray*, 901 F.2d 1132 (1st Cir.), *cert. denied* —— U.S. ——, 111 S.Ct. 245, 112 L.Ed.2d 204 (1990) and *Salamone*, 869 F.2d 221. It is a function of what conduct is to be proved, not what evidence will be used. *People v. Flowers*, 186 Mich.App. 652, 465 N.W.2d 43 (1990); *Ex parte Iglehart*, 802 S.W.2d 351 (Tex.App.1990).

## IV.

### CONCLUSION

This is not a *Dowling* case, this is a *Grady* double jeopardy case which, within the process used at this second burglary (larceny) trial, should effectively preclude affirming this conviction. This majority consequently authenticates a violation of both the state and federal constitutions. I dissent.

MACY, Justice, dissenting.

I dissent. It is this Court's duty to make sure that litigants are competing on a level playing field. If the prosecution is permitted to reintroduce evidence of an "intent to steal" in a retrial of a burglary charge, the defendant should be able to show that such evidence was not sufficient in a previous trial to establish the "intent to steal" to convict the defendant for larceny.