# IN THE SUPREME COURT, STATE OF WYOMING

# 2019 WY 131

OCTOBER TERM, A.D. 2019

December 27, 2019

TONY SCOTT CERCY,

Appellant
(Defendant),

v.

S-19-0099

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
> *H. Michael Bennett, Bennett Law Group, P.C., Cheyenne, Wyoming; Sean Connelly, Connelly Law, LLC, Denver, Colorado. Argument by Mr. Connelly.*

*Representing Appellee:*
> *Bridget Hill, Attorney General; Jenny Craig, Deputy Attorney General; Christyne Martens, Senior Assistant Attorney General; Benjamin Fischer, Assistant Attorney General. Argument by Mr. Fischer.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    After his first jury trial ended in not-guilty verdicts on two counts and a mistrial on the third count, the jury in a second trial found Tony Cercy guilty of third-degree sexual assault.   Mr. Cercy appeals his conviction claiming the second trial violated the constitutional prohibition against double jeopardy.   We reverse, though on instructional grounds rather than double jeopardy.

## *ISSUES*

[¶2]    Mr. Cercy raised several issues on appeal which we rephrase as follows:

1. Did the decision to retry Mr. Cercy for third-degree sexual assault violate the prohibition against double jeopardy?

2. Was the jury properly instructed on the law under which it could find Mr. Cercy guilty of third-degree sexual assault?

3. Does evidentiary or double jeopardy law govern evidence of cunnilingus on retrial?

## *FACTS*

[¶3]    June 24, 2017, started out like many summer days at Alcova reservoir.   People breakfasted with friends and family, enjoyed the water, and drank copious amounts of alcohol.   That night, two groups of people, one older and one younger, made their way to Tony Cercy's lake house to continue the party.   One member of the younger crowd, a young woman, passed out on the Cercys' couch.   When the younger group was ready to leave, they asked Tony's wife, Caryl, if the young woman could remain on the sofa, and Mrs. Cercy agreed she could stay.   The older crowd continued to party until around 1:00 in the morning.   Soon after the older group left, a very intoxicated Mr. Cercy, Mrs. Cercy, and a friend staying with them, got ready for bed.   Mr. Cercy went to bed in a guest room, while Mrs. Cercy and her four dogs slept in the master bedroom.

[¶4]    The young woman on the sofa testified she woke up around 3:15 in the morning to find Mr. Cercy, half-naked, performing oral sex on her.   She stated that when she woke up and touched his head, Mr. Cercy said, "I've been trying to wake you up with my dick and my tongue."   She pushed him away and immediately started contacting people she knew at the lake for help, but got no response. Mr. Cercy gave her a ride to a friend's lake house.   As she got out of the vehicle, he said, "If you tell anyone else about this . . . or what you woke up to, I'll make sure that you're killed, if not the both of us."

1

[¶5]    Over the next three days, the young woman reported parts of the assault to multiple friends.  Rumors flew around Casper, eventually making their way to the young woman's father.  After the young woman and her father talked, they decided to report the assault to the police.

[¶6]    The State charged Mr. Cercy with:  (1) first-degree sexual assault, requiring sexual intrusion, based on the theory that the victim was helpless and could not have consented; (2) second-degree sexual assault, requiring sexual intrusion, on the theory that Mr. Cercy caused submission of the victim by any means that would prevent resistance by a victim of ordinary resolution; and (3) third-degree sexual assault, requiring sexual contact, based on alternative theories of sexual contact under the circumstances of both first- and second-degree sexual assault.  Denying any wrongdoing, Mr. Cercy went to trial in February 2018.

[¶7]    At trial, the State presented evidence indicating that a half-naked Mr. Cercy undressed the unconscious young woman, performed oral sex on her, and threatened her with her life.  The young woman testified that she made dozens of attempts to contact people in the early morning hours of June 25, 2017.  The State also called witnesses to discuss the young woman's demeanor after the alleged assault and the information she gave about what had happened; as well as expert witnesses to explain the lack of DNA evidence, the activation of Mr. Cercy's phone camera during the hour in question, and the myths surrounding sexual assault victims.  After twelve hours of deliberation, the jury sent word that it had reached a decision on two counts and was hung on the third.  Mr. Cercy objected to hearing any verdict and moved for a mistrial.  Instead, the district court decided to hear the two unanimous verdicts.  The jury found Mr. Cercy not guilty of first- and second-degree sexual assault and was unable to reach a decision on third-degree sexual assault.  The district court declared a mistrial on the hung count.

[¶8]    Shortly thereafter, the State decided to retry Mr. Cercy for third-degree sexual assault. Mr. Cercy argued the retrial violated double jeopardy.  The district court ruled that the State could retry Mr. Cercy and, after a change of venue to Thermopolis, the second trial began in November 2018.  The evidence, witnesses, and story were almost identical to those presented during the first trial.

[¶9]    During the second trial, Mr. Cercy asked the district court to prohibit the State from presenting evidence of cunnilingus; to give a limiting instruction whenever the State introduced evidence of cunnilingus; to give several jury instructions aimed at ensuring the jury did not convict based on acquitted conduct; and to use a particularized verdict form that required the jury to explain the factual basis for conviction.  The district court denied all requests.  The jury returned a guilty verdict, and the district court sentenced Mr. Cercy to 6 to 8 years in prison.  This appeal followed.

## DISCUSSION

[¶10]  Mr. Cercy urges us to decide this case on double jeopardy grounds.  We first address the threshold issue of whether the existence of a second trial violated the prohibition against double jeopardy.

### I.  Mr. Cercy's second trial for third-degree sexual assault did not violate the prohibition against double jeopardy

### A.  Double Jeopardy

[¶11]  The Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits any person from being "twice put in jeopardy of life or limb" for the same offense.  U.S. Const. amend. V; *Currier v. Virginia*, --- U.S. ---, ---, 138 S.Ct. 2144, 2149, 201 L.Ed.2d 650 (2018).  In *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970), the Supreme Court held that the rule of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy."  Mr. Cercy argues this doctrine precluded a second trial in his case.[1]

[¶12]  In *Ashe*, four masked men robbed six men playing poker.  *Id.* at 438, 90 S.Ct. at 1191.  The State charged Mr. Ashe with robbing one of them.  *Id.*  At trial, Mr. Ashe argued that he was not one of the masked robbers, and the jury returned a not-guilty verdict.  *Id.* at 439, 90 S.Ct. at 1192.  The State then charged him with robbing a different poker player.  *Id*.  At the second trial, Mr. Ashe again asserted that he was not one of the robbers.  *Id.* at 440, 90 S.Ct. at 1192.  The second jury convicted Mr. Ashe.  *Id.*  The Supreme Court reversed, holding that the second trial violated the prohibition against double jeopardy.  *Id.* at 445-47, 90 S.Ct. at 1195-96.  The Court reached that conclusion by considering whether, after "taking into account the pleadings, evidence, charge, and other relevant matter [of the prior proceeding], . . . a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444, 90 S.Ct. at 1194.  The Court found:

> The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The federal

---

[1] The State argues that Mr. Cercy waived his double jeopardy claim by moving for a mistrial.  At oral argument, the State conceded that its argument was weakened because of a misstated key fact about the procedural history in *Yeager v. United States*, 557 U.S. 110, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009), yet urges this Court to extend *Currier v. Virginia*, ---U.S. ---, 138 S.Ct. 2144, to find Mr. Cercy waived his right to appeal based on double jeopardy.  We decline to do so.

rule of law, therefore, would make a second prosecution for the robbery of [the second poker player] wholly impermissible.

*Id.* at 445, 90 S.Ct. at 1195.

[¶13]  Mr. Cercy argues *Ashe* governs his case because his defense at both trials was that he was asleep in another room the entire time and had no contact with the young woman. Thus, under his analysis, retrial for third-degree sexual assault violated double jeopardy because no rational jury could find he was not present for first- or second-degree sexual assault but was for third-degree sexual assault.  On its face, this argument has some appeal. However, "a rational jury could have grounded its verdict upon an issue other than that which [Mr. Cercy] seeks to foreclose from consideration."  Subsequent cases applying *Ashe* help to clarify the distinction.

[¶14]  In *Yeager v. United States*, 557 U.S. 110, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009), the Supreme Court considered the *Ashe* doctrine's application to hung counts.  There, Mr. Yeager was tried for multiple counts of securities fraud and insider trading.  *Id.* at 114, 129 S.Ct. at 2363.  The jury returned not guilty verdicts on the fraud charges and hung on the insider trading charges.  *Id.* at 115, 129 S.Ct. at 2364.  The government obtained a new indictment, and Mr. Yeager moved to dismiss.  *Id.*  Mr. Yeager brought an interlocutory appeal arguing double jeopardy barred his retrial.  *Id.* at 115-16, 129 S.Ct. at 2364-65.  On petition for certiorari, the Supreme Court held "the consideration of hung counts has no place in the issue-preclusion analysis. . . .  To identify what a jury necessarily determined at trial, courts should scrutinize a jury's decisions, not its failures to decide."  *Id.* at 122, 129 S.Ct. at 2368.  Thus, under *Yeager*, we give no weight to the fact that a jury failed to reach a verdict.

[¶15]  The Supreme Court then looked to the charges and concluded that one element, the possession of insider information, was a critical issue of ultimate fact for both the securities fraud counts and the insider trading counts.  *Id.* at 119-23, 129 S.Ct. at 2366-69.  Thus, "if the possession of insider information was a critical issue of ultimate fact in all of the charges . . . , a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element."  *Id.* at 123, 129 S.Ct. at 2368-69.

[¶16]  Together, *Ashe* and *Yeager* instruct that we must determine what the jury "necessarily decided" in the first trial to determine whether double jeopardy precluded a second trial.  *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194; *Yeager*, 557 U.S. at 119, 129 S.Ct. at 2366.  *Yeager* and cases applying it look to the facts and elements necessary to prove each charge.  *Yeager*, 557 U.S. at 119-23, 129 S.Ct. at 2366-69; *United States v. Hoeffner*, 626 F.3d 857 (5th Cir. 2010) (holding functional acquittal of honest services fraud did not decide a critical issue of ultimate fact in the remaining charge of property fraud); *Jones v. State*, 797 S.E.2d 461 (Ga. 2017) (holding a jury verdict finding the defendant did not

4

intend to kill the victim in one trial did not preclude a finding that he intended to cause the victim physical pain and, thus, double jeopardy did not prohibit retrial for cruelty to children and felony murder); *Commonwealth v. Leonard*, 805 S.E.2d 245 (Va. 2017) (holding collateral estoppel inapplicable where defendant was trying to bind the Commonwealth to a prior evidentiary ruling, not seeking to preclude it from relitigating a factual finding made by a prior court); *State ex rel. Taylor v. Janes*, 693 S.E.2d 82 (W. Va. 2010) (retrial not precluded where the jury acquitted defendant of conspiracy to commit first-degree murder and hung on first-degree murder because the conspiracy acquittal did not necessarily decide whether the defendant killed the victim). Finally, as the Supreme Court recently cautioned, the *Ashe* double jeopardy bar is a high one.

> *Ashe*'s suggestion that the relitigation of an issue can sometimes amount to the impermissible relitigation of an offense represented a significant innovation in our jurisprudence. Some have argued that it sits uneasily with this Court's double jeopardy precedent and the Constitution's original meaning. See*, e.g., Ashe, supra,* at 460-461, 90 S.Ct. 1189 (Burger, C.J., dissenting); *Yeager*, *supra* at 127-128, 129 S.Ct. 2360 (Scalia, J., dissenting). But whatever else may be said about *Ashe*, we have emphasized that its test is a demanding one. *Ashe* forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial. See *Yeager*, *supra*, at 119-120, 129 S.Ct. 2360; *id*., at 127, 129 S.Ct. 2360 (Kennedy, J., concurring in part and concurring in judgment); *id*., at 133-134, 129 S.Ct. 2360 (Alito, J., dissenting).

*Currier*, --- U.S. at ---, 138 S.Ct. at 2149-50.

[¶17]  The Tenth Circuit's analysis in *United States v. Wittig*, 575 F.3d 1085 (10th Cir. 2009), is instructive. There, the defendants were charged with various counts of wire fraud, laundering the proceeds of wire fraud, circumvention of internal controls, and conspiracy to commit wire fraud. *Id.* at 1092-93. The first trial resulted in a hung jury. *Id.* at 1093. The second trial resulted in convictions which the defendants appealed. *Id.*  On appeal from the second trial, the Tenth Circuit found that the government had failed to present any evidence on one of the elements of wire fraud and reversed the wire fraud and laundering the proceeds of wire fraud convictions. *Id*. at 1094. The court also reversed the remaining convictions because the jury was not properly instructed. *Id.*  The government proceeded to a third trial on the counts reversed for instructional error and defendants objected based on double jeopardy. *Id.* at 1095. The court denied the defendants' motion and an interlocutory appeal followed. *Id.*

[¶18] The Tenth Circuit, applying the double jeopardy doctrine of collateral estoppel, asked two questions: "[f]irst, is the issue the defendants wish to foreclose from trial the actual basis for their prior acquittal? Second, is the same issue necessary to the prosecution's case in this proceeding? If both questions yield affirmative answers, collateral estoppel bars retrial of the issue." *Id.* at 1098 (internal citation omitted). The court in *Wittig* answered the first question easily because the first reversal (acting as an acquittal) resulted from the government's failure to prove an element of wire fraud—specifically it failed to show that SEC reports regarding personal use of the company airplane were false. *Id.* The court moved to the second question and found that the indictment included much broader conduct than the acquitted conduct and that the government could prove the defendants engaged in a conspiracy to commit wire fraud without relitigating whether the SEC reports about the private use of the company plane were false. *Id.* at 1099. The court noted that "just because the defendants may not have *succeeded* in either committing wire fraud or money laundering, [does not mean] they did not *conspire* to do those things. . . . The conspiracy to commit money laundering charge is therefore not barred by the acquittal for wire fraud." *Id.* at 1104 (emphasis in original).

[¶19] Mr. Cercy bears the burden of demonstrating that the jury's acquittals on first- and second-degree sexual assault decided a critical issue of ultimate fact in the third-degree count. *Bravo-Fernandez v. United States*, ---U.S. ---, ---, 137 S.Ct. 352, 360, 196 L.Ed.2d 242 (2016). In his first trial, the State charged Mr. Cercy with one count each of first-, second-, and third-degree sexual assault.[2] The jury acquitted Mr. Cercy of first- and second-degree sexual assault. Double jeopardy only bars Mr. Cercy's retrial for third-degree sexual assault if these acquittals necessarily decided an issue critical to the third-degree charge in Mr. Cercy's favor. Thus, we examine the sexual assault statutes to determine whether the jury could find Mr. Cercy guilty of third-degree sexual assault on an issue not resolved in his favor in the first trial.

### 1. Statutory Interpretation of Wyoming Sexual Assault Statutory Scheme

[¶20] "Statutory interpretation is a question of law, which we consider *de novo*." *Bear Cloud v. State*, 2013 WY 18, ¶ 14, 294 P.3d 36, 40 (Wyo. 2013). In Wyoming, first- and second-degree sexual assault occur when an actor inflicts sexual intrusion on a victim. Wyo. Stat. Ann. § 6-2-302(a), Wyo. Stat. Ann. § 6-2-303(a) (LexisNexis 2019).[3] In contrast, third-degree sexual assault specifically excludes sexual intrusion:

---

[2] While "double jeopardy forbids successive prosecution of a criminal defendant for a greater and lesser-included offense," third-degree sexual assault is not a lesser included offense of first- and second-degree sexual assault. *Granzer v. State*, 2010 WY 130, ¶ 13, 239 P.3d 640, 645 (Wyo. 2010); *see also Ohio v. Johnson*, 467 U.S. 493, 501, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984); *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977); *Jackson v. State*, 2013 WY 130, ¶ 2, 311 P.3d 163, 164 (Wyo. 2013).

[3] In addition to sexual intrusion, as charged in this case, first-degree sexual assault requires that the "victim

6

(a)     An actor commits sexual assault in the third degree **if, under circumstances not constituting sexual assault in the first or second degree**:

. . .

(iii)     The actor subjects a victim to sexual contact[4] under any of the circumstances of [first-degree sexual assault] or [second-degree sexual assault] **without inflicting sexual intrusion on the victim** and without causing serious bodily injury to the victim.

Wyo. Stat. Ann. § 6-2-304(a)(iii) (emphasis added).

[¶21]   In interpreting statutes, "[t]he plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary.  Where there is plain, unambiguous language used in a statute there is no room for construction." *Hopkins v. State*, 2019 WY 77, ¶ 7, 445 P.3d 582, 585 (Wyo. 2019).  Section 304 plainly states that third-degree sexual assault occurs under circumstances not constituting first- or second-degree sexual assault.  Wyo. Stat. Ann. § 6-2-304(a).  For a sexual assault to constitute first- or second-degree sexual assault, the actor must inflict sexual intrusion on the victim.  Wyo. Stat. Ann. § 6-2-302(a), Wyo. Stat. Ann. § 6-2-303(a).  The statute reinforces this difference by explicitly excluding sexual intrusion from third-degree sexual assault: "An actor commits sexual assault in the third degree, if . . . [t]he actor subjects a victim to sexual contact . . . without inflicting sexual intrusion."  Wyo. Stat. Ann. § 6-2-304(a)(iii).  "'Sexual intrusion' means . . . cunnilingus."  Wyo. Stat. Ann.  § 6-2-301(a)(vii)(B).  The language of the statute is clear and unambiguous—third-degree sexual assault cannot include sexual intrusion and cunnilingus is sexual intrusion.  Wyo. Stat. Ann. § 6-2-304(a)(iii); § 6-2-301(a)(vii)(B).  Therefore, cunnilingus cannot satisfy the "sexual contact" element necessary for a third-degree sexual assault conviction.[5]

---

is physically helpless, and the actor knows or reasonably should know that the victim is physically helpless and that the victim has not consented," Wyo. Stat. Ann. § 6-2-302(a)(iii); second-degree sexual assault requires the "actor [to] cause[] submission of the victim by any means that would prevent resistance by a victim of ordinary resolution."  Wyo. Stat. Ann. § 6-2-303(a)(ii).

[4] "Sexual contact" is defined as "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts." Wyo. Stat. Ann. § 6-2-301(a)(vi).

[5] The district court instructed the first jury that cunnilingus is defined as "an act of sex committed with the mouth and the female sex organ."  This definition of cunnilingus covers all the oral contact alleged in this case.  The State's argument on retrial, and in this appeal, that incidental touching of tongue or cheek to the victim's perineum or pubic area constitutes a separate act of third-degree sexual assault is unavailing.  The oral sex act described by the victim in both trials is cunnilingus, despite the State's attempt to re-characterize

7

## 2. What the Jury Necessarily Decided

[¶22]  Sexual intrusion is an element of both first- and second-degree sexual assault, and the intrusion alleged in this case was cunnilingus.  Although Mr. Cercy would have us conclude that the jury in the first trial necessarily decided he was not on the couch with the young woman, we can only conclude that what the jury necessarily decided was that Mr. Cercy did not commit sexual assault by cunnilingus.

> A second trial "is not precluded simply because it is unlikely—or even very unlikely—that the original jury acquitted without finding the fact in question."  To say that the second trial is tantamount to a trial of the same offense as the first and thus forbidden by the Double Jeopardy Clause, we must be able to say that "it would have been *irrational* for the jury" in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second.

*Currier*, --- U.S. at ---, 138 S.Ct. at 2150 (citations omitted).

[¶23]  In the Amended Bill of Particulars, the State alleged third-degree sexual assault occurred when Mr. Cercy "subjected the victim to . . . touching of the victims (sic) intimate parts, namely the external genitalia, pubes or perineum with his tongue, mouth and/or surrounding portions of his body, and/or *the touching of the victim, in any manner, with his penis, and/or the touching of the clothing covering the immediate area of the victim's intimate parts*." (emphasis added).  As in *Wittig*, 575 F.3d 1085, the Amended Bill of Particulars in this case contained broader conduct than the cunnilingus for which Mr. Cercy was acquitted, including penile touching, and touching the clothing covering the victim's intimate parts.  *See also Eatherton v. State*, 810 P.2d 93, 100 (Wyo. 1991) ("Because a jury might reasonably conclude that . . . [Eatherton took the wallet containing $600], even if it did not believe beyond a reasonable doubt that . . . [Eatherton] committed the . . . [larceny] charged at the first trial, the collateral estoppel component of the Double Jeopardy Clause is inapposite.") (alterations in original).  Because third-degree sexual assault by definition excludes cunnilingus, and because the State relied on other conduct to allege that third-degree sexual assault occurred, retrial on that count does not violate double jeopardy.

---

it as merely "sexual contact."

## II. The jury was not properly instructed on the law under which it could find Mr. Cercy guilty of third-degree sexual assault

[¶24] Having concluded that the decision to retry Mr. Cercy for third-degree sexual assault did not violate double jeopardy, we turn to the conduct of the second trial. As the *Wittig* court noted, retrial may violate double jeopardy depending on the evidence admitted. 575 F.3d at 1094. However, this Court cannot fairly evaluate whether retrial violated double jeopardy based on the evidence admitted because the jury was not properly instructed. Further, we do not "address constitutional issues if we are able to resolve the case on other grounds." *Wilson v. Bd. of Cty. Comm'rs of Cty. of Teton*, 2007 WY 42, ¶ 14, 153 P.3d 917, 922 (Wyo. 2007). In evaluating the second trial, we conclude the instructional errors are dispositive.

### A. Jury Instructions

[¶25] We afford the trial court "wide latitude" when reviewing jury instructions. *Dennis v. State*, 2013 WY 67, ¶ 36, 302 P.3d 890, 897 (Wyo. 2013) (quoting *Mowery v. State*, 2011 WY 38, ¶ 13, 247 P.3d 866, 870 (Wyo. 2011)). "To ensure the jury's verdict is reliable, the jury instructions must correctly state the law and adequately cover the relevant issues." *Weston v. State*, 2019 WY 113, ¶ 27, 451 P.3d 758, 766 (Wyo. 2019). Ultimately, jury instructions are adequate if they "leave no doubt as to the circumstances under which the crime can be found to have been committed." *Id.* (quoting *Blevins v. State*, 2017 WY 43, ¶ 26, 393 P.3d 1249, 1255 (Wyo. 2017)). When reviewing jury instructions, we analyze them "as a whole and do not single out individual instructions or parts thereof." *Ogden v. State*, 2001 WY 109, ¶ 8, 34 P.3d 271, 274 (Wyo. 2001). Mr. Cercy proposed five instructions directed to the treatment of evidence of acquitted conduct which the district court refused. We review the refusal to give a requested instruction for abuse of discretion. *Farrow v. State*, 2019 WY 30, ¶ 12, 437 P.3d 809, 815 (Wyo. 2019).

[¶26] Mr. Cercy requested various instructions telling the jury it could not convict him for third-degree sexual assault based on a finding that he committed cunnilingus on the victim.[6]

---

[6] Specifically, Mr. Cercy requested, and the district court rejected, the following instructions:

**Instruction No. ___ Refused 11/20/18**

The elements of the crime of Sexual Assault in the Third Degree are:

1. On or about June 24, 2017 through June 25, 2017;

2. In Natrona County, Wyoming;

3. The defendant, Tony Cercy;

9

4.  While [the victim] was physically helpless and the defendant, Tony Cercy, knew or reasonably should have known that [the victim] was physically helpless and that [the victim] had not consented;

5.  Subjected [the victim] to sexual contact;

6.  Without inflicting sexual intrusion or causing serious bodily injury.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proven beyond a reasonable doubt, then you should find the defendant not guilty.

**Instruction No. ___ Refused 11/20/18**
**To be Given at Close of Evidence**

Under Wyoming law, a person cannot commit sexual assault in the third degree by engaging in "cunnilingus," as that term is defined in these instructions. Therefore, in considering whether the State has proven beyond a reasonable doubt that Mr. Cercy committed sexual assault in the third degree, you may not consider [the victim]'s claim that Mr. Cercy engaged in cunnilingus on her. Stated another way, [the victim]'s claim that Mr. Cercy performed cunnilingus on her may not be a basis for finding Mr. Cercy guilty of third degree sexual assault.

**Instruction No. ___ Refused 11/20/18**

In a prior trial, Mr. Cercy was found not guilty of sexual assault based on the allegation that he subjected [the victim] to cunnilingus. He cannot be tried again for the same conduct.

You are instructed that, in considering whether the State has proven the charge of third degree sexual assault beyond a reasonable doubt, you may not consider [the victim]'s claim that Mr. Cercy performed cunnilingus on her.

**Instruction No. ___ Refused 11/20/18**
**Cunnilingus Limiting Instruction (To be Given When Evidence of Alleged Cunnilingus Introduced)**

You just heard evidence regarding an alleged sexual act of cunnilingus, which is contact between the mouth and the female genitalia. You are instructed that a person cannot commit third degree sexual assault—the only charge at issue in this case—by performing cunnilingus.

10

The district court rejected each instruction, finding they were not proper statements of law and conflicted with its ruling on double jeopardy. The district court instructed the jury, in relevant part, as follows:

## Instruction No. 13

The elements of the crime of Sexual Assault in the Third Degree, as charged in this case, are:

---

You may not consider any evidence of alleged cunnilingus when determining whether the State has proven beyond a reasonable doubt that Mr. Cercy is guilty of the crime charged in this case.

**Instruction No. ___ Refused 11/20/18**

"Sexual intrusion" means:

a. Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse;
OR
b. Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.

"Sexual Contact" means touching, with the intention of sexual arousal, gratification or abuse of the victim's intimate parts by the defendant, or of the defendant's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or defendant's intimate parts.

"Intimate parts" means the external genitalia, perineum, anus, or pubes of any person or the breasts of a female person.

"Sexual intercourse" means contact between the genitals of a male and genitals of a female. "Sexual intercourse" does not require that the penis enter the vaginal cavity. "Sexual intercourse" occurs when the penis enters the external female genitals, including the labia and vulva.

"Fellatio" means the sexual act involving oral stimulation of a person's penis.

"Analingus" means contact between the mouth and the anus of another.

"Anal intercourse" means contact between the male genitalia and the anus of another.

(Footnotes omitted.)

1.  On or about June 25, 2017;

2.  In Natrona County, Wyoming;

3.  The defendant, Tony Cercy;

4.  Subjected [the victim] to sexual contact; and

5. [The victim] was physically helpless, and the defendant, Tony Cercy, knew, or reasonably should have known, that [the victim] was physically helpless and that [the victim] had not consented.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proven beyond a reasonable doubt, then you should find the defendant not guilty.

**Instruction No. 14**

"Physically helpless" means unconscious, asleep or otherwise physically unable to communicate unwillingness to act.

"Sexual contact" means touching, with the intention of sexual arousal, gratification or abuse, of another person's intimate parts by the defendant, or of the defendant's intimate parts by another person, or of the clothing covering the immediate area of the defendant's or other person's intimate parts.

"Intimate parts" means the external genitalia, perineum, anus or pubes of any person or the breast of a female person.

[¶27]  The district court further concluded that reading the definitions of "sexual contact" and "intimate parts" together sufficiently addressed the defense's concern that the State could not prove third-degree sexual assault through sexual intrusion.  The court used the same reasoning when rejecting the requested limiting instruction.

[¶28]   Under the circumstances of this case, where testimony pertaining to cunnilingus pervaded the second trial, the jury instructions leave "doubt as to the circumstances under which the crime can be found to have been committed." *Weston,* 2019 WY 113, ¶ 27, 451 P.3d at 766.   The district court determined evidence of cunnilingus was intrinsic to the third-degree sexual assault charged in the second trial, and allowed the State to present evidence about the alleged cunnilingus.   Nearly every prosecution witness discussed the victim's claim that she awoke to Mr. Cercy performing cunnilingus on her without her consent.   No instruction limited the purpose for which the jury could consider the evidence of cunnilingus, despite Mr. Cercy's requests for such an instruction.   Further, the court failed to provide the jury with the requested instruction, including the language of the third-degree sexual assault statute, so it could not have known that the legislature specifically excluded sexual intrusion from the crime.   Finally, the definitions provided never explained the difference between "sexual intrusion" and "sexual contact."   While no single instruction was necessarily incorrect, under the facts presented to the jury in this case, the instructions leave serious doubt as to the circumstances under which the jury could convict Mr. Cercy of third-degree sexual assault.   The district court abused its discretion in failing to adequately instruct the jury, and we reverse on that basis.   On remand, if the evidence is presented as it was in the first two trials, the jury must be instructed that it cannot convict Mr. Cercy of third-degree sexual assault based on a finding that he committed cunnilingus.

## B.     Verdict Form

[¶29]   Mr. Cercy argues the district court committed reversible error by failing to give his requested verdict form.   He offered a verdict form which required the jury to identify the type of sexual contact that formed the basis for its verdict.   He noted that the State requested a similar verdict form in the first trial and the court gave it, over his objections.   Mr. Cercy argued that the verdict form was necessary in the second trial to ensure he was not convicted based on acquitted conduct.

[¶30]   The State argued against Mr. Cercy's requested verdict form in the second trial, asserting it was contrary to our precedent in *Jordin v. State*, 2018 WY 64, 419 P.3d 527 (Wyo. 2018).   There, the defendant was charged with several crimes, all of which required the State to prove that the defendant agreed to use a deadly weapon during commission of the crimes.   *Id.* at ¶ 9, 419 P.3d at 530.   The State presented evidence that the defendant had used a flashlight, a gun, and a baseball bat during the crimes.   *Id.* at ¶ 10, 419 P.3d at 531. Mr. Jordin, citing *Tanner v. State*, 2002 WY 170, 57 P.3d 1242 (Wyo. 2002), argued that because the State did not settle on a single deadly weapon at trial, it had to prove all three beyond a reasonable doubt. *Jordin*, 2018 WY 64, ¶ 10, 419 P.3d at 531.   His argument failed, as does Mr. Cercy's.

[¶31]   A jury must specify the theory under which it unanimously convicts the defendant when it is presented with alternative *elements*, not alternative factual theories for a single element. *Compare Jordin*, 2018 WY 64, ¶ 12, 419 P.3d at 531 *with Tanner*, 2002 WY 170,

¶ 13, 57 P.3d at 1246 (holding State must prove both alternative elements beyond a reasonable doubt where charging documents and instructions do not specify which alternative element formed the basis of burglary charge). "We have further held the rule does not apply when the State *presents multiple theories or facts that could satisfy an element of a crime.*" *Jordin*, 2018 WY 64, ¶ 13, 419 P.3d at 531 (emphasis added). Here, the State presented multiple theories or facts that could satisfy the element of sexual contact. The *Tanner* rule does not require unanimity on which facts prove the element of sexual contact. Thus, the district court did not abuse its discretion by declining to give Mr. Cercy's requested verdict form.

### III.     *Evidence of cunnilingus is subject to W.R.E. 404(b) analysis on retrial*

[¶32]   In addition to contending that his double jeopardy rights were violated by a retrial, Mr. Cercy argues that those rights were also violated by the admission of evidence of cunnilingus on retrial. He contends that the district court's W.R.E. 404(b) analysis that evidence of cunnilingus is "inextricably intertwined" and part of a "single alleged criminal episode" highlights the double jeopardy violation. Citing *Eatherton v. State*, 810 P.2d 93, 99 (Wyo. 1991), the State counters that evidence of cunnilingus on retrial is governed by evidentiary law and does not implicate Mr. Cercy's double jeopardy rights. The State argues that the district court performed a thorough W.R.E. 404(b) analysis and determined that the evidence of cunnilingus was more probative than prejudicial. As the State correctly argues, *Eatherton* is directly on point; we resolve this issue by applying evidentiary law.

### A.     Evidentiary Law Governs Evidence of Cunnilingus on Retrial

[¶33]   In *Eatherton*, the State charged Mr. Eatherton with larceny and burglary. 810 P.2d at 94-95. The jury acquitted him of larceny and convicted him of burglary. *Id*. We reversed the burglary conviction because of instructional error. *Id*. at 95. On retrial, Mr. Eatherton argued that the State should be prohibited from admitting any evidence that money was taken during the burglary because the first jury acquitted him of larceny. *Id*. The district court allowed the evidence because the facts were common to both crimes and the probative value of the evidence outweighed any prejudice to the defendant. *Id*. The district court also ruled evidence of the prior larceny acquittal inadmissible. *Id*. On appeal, this Court rejected Mr. Eatherton's argument that his double jeopardy rights had been violated. *Id*. at 100. We found that evidentiary law governed the issue and that the district court did not abuse its discretion in admitting the evidence of acquitted conduct. *Id*. ("W.R.E. Rule 404(b) justifies the admissibility of other bad acts for the purposes there set forth which include establishing 'intent.' Furthermore, the evidence was admissible simply because it was needed to permit the relation of a complete account of the events."). Finally, the *Eatherton* Court concluded that the district court did not abuse its discretion when it barred the admission of evidence of the prior acquittal under W.R.E. 403. *Id*. at 100-01.

14

[¶34]   Our decision in *Eatherton* was guided by the Supreme Court's ruling in *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).   There, the Government charged the defendant with robbing a bank in the Virgin Islands.  *Id.* at 344, 110 S.Ct. at 670.   Mr. Dowling's first trial resulted in a hung jury.  *Id.*  He was convicted on retrial, but the Third Circuit reversed.  *Id.*  During the third trial, the Government called a witness, Vena Henry, to testify that Mr. Dowling had previously entered her home with a handgun and robbed her, even though Mr. Dowling had been acquitted of those charges. *Id.* at 344-45, 110 S.Ct. at 670.   The lower court performed a Rule 404(b) analysis and allowed the Government to present the evidence subject to limiting instructions about the purpose for which the jury could consider the acquitted conduct.  *Id.* at 345-46, 110 S.Ct. at 670-71.   On appeal, the Supreme Court determined that evidentiary law governed the decision to admit evidence of acquitted conduct.  *Id.* at 348, 110 S.Ct. at 672 ("unlike the situation in *Ashe v. Swenson*, the prior acquittal did not determine an ultimate issue in the present case . . . and we decline to extend *Ashe v. Swenson* and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted.").

[¶35]   Mr. Cercy's efforts to distinguish his case from *Dowling* and *Eatherton* are unpersuasive.[7]   He argues that *Dowling* allowed evidence of acquitted conduct under 404(b) in a trial for a separate offense that occurred weeks after the offense for which he was acquitted.   That factual distinction ignores this Court's application of the *Dowling* standard in *Eatherton*, which had a procedural history similar to Mr. Cercy's.   Both Mr. Eatherton and Mr. Cercy were tried with multiple crimes arising out of a single alleged incident, acquitted on one or more of the charges, retried on the remaining charges, and the State admitted evidence of the acquitted charge in the retrial without evidence of the acquittal.  *Eatherton*, 810 P.2d at 94-100.   We find our decision there is controlling.

## B.      W.R.E. 404(b)

[¶36]   The parties did not fully brief the W.R.E. 404(b) issue on appeal.   However, the interest in judicial economy, and the prospect of a third trial in this case, prompt us to address it "in an effort to avoid error in a retrial."  *Rodiack v. State*, 2002 WY 137, ¶ 13, 55 P.3d 1, 4 (Wyo. 2002); *McLaren v. State*, 2017 WY 154, ¶ 3, 407 P.3d 1200, 1202

---

[7] Mr. Cercy cites to dicta in *Eatherton*, 810 P.2d at 99-100, to attempt to distinguish his case.   The language Mr. Cercy relies on (recognizing a significant difference between conduct and evidence) is from a Supreme Court case that has been explicitly overruled.  *United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) ("We have concluded, however, that *Grady* [*v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)] must be overruled. . . . The 'same-conduct' rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy.").   Our decision in *Eatherton* did not rely on the overruled case and instead relied on *Dowling*, which remains good law.

15

(Wyo. 2017); *Meiners v. Meiners*, 2016 WY 74, ¶ 23, 376 P.3d 493, 498 (Wyo. 2016); *Phillips v. State*, 597 P.2d 456, 463 (Wyo. 1979).

[¶37] *Dowling* and *Eatherton* instruct that the decision to admit acquitted conduct is governed by the Rules of Evidence. The district court here correctly determined that evidence of cunnilingus was a 404(b) issue, citing our decision in *Leyva v. State*, 2007 WY 136, 165 P.3d 446 (Wyo. 2007), performed a perfunctory 404(b) analysis, and determined it was admissible. It gave an oral ruling out of the presence of the jury directly before opening statements:

> The Court finds that the proposed evidence, to the extent that it could implicate sexual intrusion, is what the Wyoming Supreme Court refers to as intrinsic evidence . . . . Since the proposed evidence is intrinsic evidence, some of the factors the Court applies in analyzing the proposed evidence either do not seem to apply or are not very helpful in evaluating the admissibility of the proposed evidence. This is not a case where there is a separate act from the separate incident that preceded the charged offense. The defendant was acquitted of first- and second-degree sexual assault; but this Court has found that such a verdict did not necessarily determine an ultimate issue with respect to the remaining charge, and the reason for the defendant's acquittal is uncertain.

> The defendant does dispute all of the issues on which the State is offering the proposed evidence. Other evidence is available to prove the charged offense, but the proposed evidence is intrinsic to the charged offense. There is no reasonable way of excluding it, and its admission would not be unnecessarily cumulative.

> The proposed evidence involves the same alleged victim and the same charged incident. The legislature views sexual intrusion as more reprehensible than sexual contact. Although the evidence in this case is likely such that there is some fine lines between the two, ultimately, the proposed evidence is probative and admissible for proper purposes rather than improper purposes under Rule 404.

> It is admissible as intrinsic evidence of the charged offense and also evidence that the defendant committed third-degree sexual assault. The probative value for those proper

purposes is not substantially outweighed by the potential for unfair prejudice.

[¶38]   While intrinsic evidence is admissible under W.R.E. 404(b), it can be admitted only if it survives a *Gleason* analysis[8]:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo. 2002).  *Gleason* imposes an exacting standard that requires the court to make a detailed and specific finding of admissibility.  *E.g.*, *Volpi v. State*, 2018 WY 66, ¶ 13, 419 P.3d 884, 889 (Wyo. 2018); *Garrison v. State*, 2018 WY 9, ¶ 26, 409 P.3d 1209, 1217 (Wyo. 2018).

[¶39]   Here, the district court's brief overview of the factors, its decision that some of the *Gleason* 404(b) factors do not apply given the intrinsic nature of the evidence, and its conclusory statement that the probative value is not outweighed by the potential for unfair prejudice are cursory at best.  We once again "remind the trial courts that, while express findings on *each* factor [weighing the probative versus prejudicial value] are not necessary, abuse of discretion, or the lack thereof, cannot be determined by reviewing a record that contains no information as to how that discretion was exercised." *Gleason*, 2002 WY 161, ¶ 28, 57 P.3d at 343 (emphasis in original).

[¶40]   Mr. Cercy asked for a limiting instruction three times: before the trial, during the trial, and during the jury instruction conference.  The district court initially said it would determine whether to issue a limiting instruction when requested at trial.  During the trial,

---

[8] We note that our precedent regarding intrinsic evidence appears contradictory in places.  *Compare, Leyva*, 2007 WY 136, ¶ 22-23, 165 P.3d at 453 (holding that "part and parcel" evidence is the same as "intrinsic" evidence and that intrinsic evidence is subject to W.R.E. 404(b)); *Roeschlein v. State*, 2007 WY 156, ¶¶ 8-16, 168 P.3d 468, 471-73 (Wyo. 2007) (finding that evidence was intrinsic and not subject to W.R.E. 404(b) because it was, in fact, charged misconduct rather than uncharged misconduct), *with Cardenas v. State*, 2014 WY 92, ¶ 8, 330 P.3d 808, 810-11 (Wyo. 2014) (finding that intrinsic evidence is evidence that goes towards proving some aspect of the crime charged and that W.R.E. 404(b) does not prohibit introduction of evidence that is intrinsic to the charged act).  We do not attempt to reconcile these lines of cases here because it was not sufficiently raised on appeal.  Regardless, the "intrinsic evidence" cases are distinguishable because they involved either charged misconduct, or uncharged misconduct whereas here evidence of cunnilingus is acquitted conduct.  *Eatherton* and *Dowling* control admittance of acquitted conduct, intrinsic or not, and clearly hold that it is subject to Rule 404(b).

the district court rejected Mr. Cercy's request and held the tendered instruction under advisement until the final jury instruction conference. At the jury instruction conference, the district court rejected the tendered limiting instruction, ruling that

> giving a limiting instruction is further complicated [in] that the Court has ruled that evidence that could implicate sexual intrusion is intrinsic evidence and that such evidence is also probative of whether the defendant committed third-degree sexual assault, including but not limited to intent required for sexual contact. The Court will nevertheless find that the statutory definition of sexual contact when read together with the statutory definition of intimate parts is sufficient to address the issues raised.

The district court admitted evidence of cunnilingus under W.R.E. 404(b). Part four of the *Gleason* test is not discretionary; it requires a limiting instruction be given upon request—even if crafting one is "complicated" under the circumstances of the case.

[¶41] The Supreme Court in *Dowling* emphasized that the district court gave limiting instructions to the jury about the purpose for which the evidence could be used and that the defendant had been acquitted of the conduct. 493 U.S. at 345-46, 110 S.Ct. at 670-71 ("After a hearing, the District Court characterized the testimony as highly probative circumstantial evidence and ruled that it was admissible under Rule 404(b). . . . [T]he District Court instructed the jury that petitioner had been acquitted of robbing [the witness], and emphasized the limited purpose for which [the witness's] testimony was being offered. The court reiterated that admonition in its final charge to the jury.") (internal citation omitted). Here, the district court neither instructed the jury that a prior jury acquitted Mr. Cercy of cunnilingus, nor allowed Mr. Cercy to present evidence to that effect. *Eatherton* allows the State to introduce evidence of acquitted conduct without evidence or instructions to the jury that the defendant was acquitted of the prior conduct. However, we emphasized that the holding

> does not stand for the proposition that evidence of a prior acquittal is never admissible. . . . [T]he trial court may receive evidence of an acquittal if the court determines that its probative value outweighs any other reasons stated in Rule 403, W.R.E., which would require the evidence to be excluded. . . . The thrust of our decision is no more than that the admission into evidence of proof of an acquittal of a prior crime is within the exercise of sound discretion by the trial court.

18

*Eatherton*, 810 P.2d at 101. Courts must carefully evaluate the admissibility of all evidence, including evidence of a prior acquittal, when evidence of the acquitted conduct is admitted against the defendant.[9]

[¶42] Finally, while we are convinced that evidentiary law governs the decision to admit evidence of cunnilingus on retrial, we are not oblivious to the potential double jeopardy pitfalls. As the *Wittig* court recognized, although evidence of acquitted conduct *may* be admissible under the rules of evidence, retrial could still constitute a double jeopardy violation if the State "seeks to rehash only matters on which the defendant[] ha[s] already been acquitted." 575 F.3d at 1091, 1101.[10] While the State may be permitted to admit evidence of cunnilingus on retrial for third-degree sexual assault, it cannot rely on cunnilingus for its proof of the elements of the crime without running afoul of the constitutional guarantee against double jeopardy. Proper jury instructions will reduce that risk.

---

[9] Other courts addressing whether to admit evidence of acquitted conduct under 404(b) have found that a court abuses its discretion by failing to also admit evidence of the prior acquittal. *People v. Ward*, 952 N.E.2d 601, 611 (Ill. 2011) (finding the lower court abused its discretion by barring acquittal evidence. "[P]roper application of the [Rule 403] balancing test firmly establishes the serious risk of undue prejudice to defendant created by the admission of the other-crimes evidence in the absence of any acquittal evidence, '[t]he risk of misleading or overpersuading the jury is palpable.' 'Fairness requires disclosure.'") (citation omitted); *Kinney v. People*, 187 P.3d 548, 554 (Colo. 2008) (finding that the district court abused its discretion by refusing to instruct the jury that the defendant had been acquitted of prior bad act conduct when State introduced extensive evidence of the acquitted conduct); *Hess v. State*, 20 P.3d 1121, 1129 (Alaska 2001) (finding the court erred in failing to allow evidence of acquittal where State introduced evidence of the acquitted conduct as impeachment evidence); *see also Mills v. Warren*, 436 Fed.Appx. 506, 509-10 (6th Cir. 2011) (the presence of a limiting instruction on the purpose for which acquitted conduct could be used was a major factor in the court's finding that no habeas corpus relief was available to petitioner because the court did not abuse its discretion in admitting evidence of prior acquitted conduct); 1 Federal Evidence § 4:31 (4th ed.) (June 2019 Update) ("Where the government offers proof of prior acts that have led to charges and acquittal, the defense should be permitted to tell the jury about the acquittal, and indeed the court should include this point in its instructions.").

[10]          [T]he defendants suggest that the government lacks evidence to back up its broader conspiracy allegations . . . [and] predict, the government will be forced to rely again on the SEC Reports and airplane use to secure a conviction. . . . Certainly the fact that in the last trial the government relied so heavily on airplanes and SEC Reports to prove its substantive and conspiracy charges . . . does make one wonder whether the government really does have any other proof. . . . [A]ppellate jurisdiction limits us to asking whether the crime charged . . . requires proof of the issue conclusively decided. . . . Given the relative breadth of the conspiracy allegations compared with the wire fraud counts in this case, we cannot say a retrial is legally impossible.

(Emphasis in original.)

19

## *CONCLUSION*

[¶43] The jury in the first trial necessarily decided that Mr. Cercy did not commit cunnilingus. Cunnilingus cannot satisfy the "sexual contact" element of third-degree sexual assault. Therefore, the decision to retry Mr. Cercy for third-degree sexual assault did not violate double jeopardy. However, on retrial, the district court inadequately instructed the jury, leaving doubt about the circumstances under which it could convict Mr. Cercy of third-degree sexual assault. We reverse and remand for proceedings consistent with this opinion.